**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Chapter 9 |
| SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION, | Case No. 12-43503-CEC |
| Adjusted Debtor. | |
| SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION, | |
| Plaintiff, | |
| v. | |
| DELAWARE NORTH COMPANIES, INC., DELAWARE NORTH COMPANIES GAMING & ENTERTAINMENT, INC., DNC GAMING MANAGEMENT IN SUFFOLK LLC, and DELAWARE NORTH ISLANDIA PROPERTIES, LLC, | A.P. No. 19-01133-CEC |
| Defendants. | |

## <u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.  SUFFOLK OTB'S CLAIM UNDER THE NEW YORK FALSE CLAIMS ACT
    MUST BE DISMISSED ........................................................................................... 2

    A.  Suffolk OTB Fails to Plead Its NYFCA Claim with Particularity ........................ 3

        1.  Suffolk OTB Fails to Plead the Who, What, Where, When and How........ 4

        2.  Suffolk OTB Is Not Entitled to a Lowered Pleading Standard.................. 5

    B.  Suffolk OTB Admits That It Relies on Group Pleading......................................... 7
    C.  Suffolk OTB Fails to Adequately Plead Knowledge, Falsity, or Materiality......... 9

        1.  Suffolk OTB Fails to Adequately Plead Knowledge ................................. 9

        2.  Suffolk OTB Fails to Adequately Plead Falsity ...................................... 10

        3.  Suffolk OTB Fails to Adequately Plead Materiality................................. 12

    D.  Suffolk OTB Has Failed to Plead the Existence of a "Claim" as Required by §§
        189(1)(a) and (b).............................................................................................. 14

        1.  Suffolk OTB Has Failed to Plead "Presentment" ..................................... 17

    E.  Suffolk OTB Has Failed to Plead "Delivery" as Required by § 189(1)(d) .......... 18
    F.  Suffolk OTB Has Failed to Plead a Violation Under § 189(1)(g) ....................... 18
    G.  Suffolk OTB's New Claim Under § 189(1)(h) Is Improper and Deficient........... 19

II.  SUFFOLK OTB HAS FAILED TO STATE A CLAIM FOR A BREACH OF THE
     DMS AGREEMENT ............................................................................................. 20

    A.  Suffolk OTB Fails to Plead any Plausible Allegations against DNC Gaming ..... 20
    B.  Various Prongs of Suffolk OTB's Claim against Delaware North Manager Fail  22

        1.  Construction Costs.................................................................................. 22

        2.  Trademarks ............................................................................................. 23

        3.  Failure to Obtain Suffolk OTB's Consent ................................................ 24

    C.  Suffolk OTB's Implied Covenant Claim is Impermissibly Duplicative............... 25

III.  SUFFOLK OTB'S CLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE
      DISMISSED .......................................................................................................... 27

    A.  Suffolk OTB has Not Shown a Fiduciary Relationship........................................ 27
    B.  The Breach of Fiduciary Duty Claim is Impermissibly Duplicative .................... 29
    C.  The Economic Loss Doctrine Bars Suffolk OTB's Claim..................................... 30

IV.  SUFFOLK OTB'S CLAIM FOR AIDING AND ABETTING FAILS............................ 32

V.  SUFFOLK OTB'S CLAIM FOR UNJUST ENRICHMENT FAILS .............................. 33

VI.  SUFFOLK OTB'S CLAIM FOR PIERCING THE CORPORATE VEIL FAILS .......... 35

    A.  Suffolk OTB's Veil Piercing Allegations Are Not Immune from Dismissal ....... 36

|  | B. | Suffolk OTB Has Failed to Allege Complete Domination | 36 |
|  | C. | Suffolk OTB Has Failed to Plead Fraud and Injustice | 39 |
| VII. | | SUFFOLK OTB'S CLAIM FOR DECLARATORY RELIEF FAILS | 41 |
| VIII. | | SUFFOLK OTB'S REQUEST FOR AN ACCOUNTING FAILS | 43 |
| CONCLUSION | | | 44 |

AMERICAS 101661622

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n. of Am.,
693 N.Y.S.3d 554 (1st Dep't 1999) ...........................................................32

7-Eleven, Inc. v. Khan,
977 F. Supp. 2d 214 (E.D.N.Y. 2013) .......................................................42

In re Am. Express Anti-Steering Rules Antitrust Litig.,
343 F. Supp. 3d 94 (E.D.N.Y. 2018) ...........................................................1

Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce,
894 N.Y.S.2d 47 (1st Dep't 2010) .............................................................26

Ariston Props., LLC v. Messer (In re FKF 3, LLC),
501 B.R. 491 (S.D.N.Y. 2013) ..................................................................21

Associated Mortg. Bankers Inc. v. Calcon Mut. Mortg. LLC,
159 F. Supp. 3d 324 (E.D.N.Y. 2016) .......................................................43

Atlantis Info. Tech. v. CA, Inc.,
485 F. Supp. 2d 224 (E.D.N.Y. 2007) .......................................................27

Barbara v. MarineMax, Inc.,
2012 U.S. Dist. LEXIS 171975 (E.D.N.Y. Dec. 4, 2012) .........................30

Bishop v. Wells Fargo & Co.,
870 F.3d 104 (2d Cir. 2017)......................................................................11

Blair v. Infineon Techs. AG,
720 F. Supp. 2d 462 (D. Del. 2010).........................................................36

Bowen v. Baldwin Union Free Sch. Dist.,
2018 U.S. Dist. LEXIS 151204 (E.D.N.Y. Aug. 31, 2018)......................20

Bullmore v. Banc of Am. Sec. LLC,
485 F. Supp. 2d 464 (S.D.N.Y. 2007)......................................................30

Bytemark, Inc.v. Xerox Corp.,
342 F. Supp. 3d 496 (S.D.N.Y. 2018)......................................................34

Candelaria v. Spurlock,
2008 U.S. Dist. LEXIS 51595 (E.D.N.Y. July 3, 2008) ..........................44

AMERICAS 101661622

Cohen v. Schroeder,
    248 F. Supp. 3d 511 (S.D.N.Y. 2017)..............................................................35, 40

Commerce & Indus. Ins. Co. v. Vulcraft, Inc.,
    1998 U.S. Dist. LEXIS 18393 (S.D.N.Y. Nov. 20, 1998)......................................32

Commonwealth ex rel. FX Analytics v. Bank of N.Y. Mellon,
    84 Va. Cir. 473 (Va. Cir. Ct. 2012)...........................................................................16

Cookware Co. (USA), LLC v. Austin,
    2017 U.S. Dist. LEXIS 178623 (S.D.N.Y. Oct. 26, 2017).......................................37

Cruz v. FXDirectDealer, LLC,
    720 F.3d 115 (2d Cir. 2013).......................................................................................26

Darlagiannis v. Darlagiannis,
    369 N.Y.S.2d 475 (2d Dep't 1975) (Opp. )...............................................................43

In re Digital Music Antitrust Litig.,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011).......................................................................40

DiTerlizzi v. DiTerlizzi,
    459 N.Y.S.2d 797 (2d Dep't 1983)............................................................................43

DiVittorio v. Equidyne Extractive Indus.,
    822 F.2d 1242 (2d Cir. 1987).......................................................................................8

E*Trade Fin. Corp. v. Deutsche Bank AG,
    2008 U.S. Dist. LEXIS 46451 (S.D.N.Y. June 13, 2008)........................................27

Evans v. Perl, 862 N.Y.S.2d 814,
    2008 N.Y. Misc. LEXIS 2105 (Sup. Ct. N.Y. Cnty. 2008).....................................43

Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),
    2018 Bankr. LEXIS 2324 (Bankr. S.D.N.Y. Aug. 6, 2018).....................................24

First Serv. Fin. v. City Lights at Queens Landing, Inc.,
    2009 U.S. Dist. LEXIS 27473 (S.D.N.Y. Mar. 19, 2009)........................................22

Galvstar Holdings, LLC v. Harvard Steel Sales, LLC,
    722 F. Appx. 12 (2d Cir. 2018)..................................................................................28

Gao v. JPMorgan Chase & Co.,
    No. 14 Civ. 4281 (PAC), 2015 WL 3606308 (S.D.N.Y. June 9, 2015)....................9

Giuffre v. Hyundai Motor Am.,
    756 F.3d 204 (2d Cir. 2014).......................................................................................42

Hard Rock Café Int'l v. Hard Rock Hotel Holdings, LLC,
   808 F. Supp. 2d 552 (S.D.N.Y. 2011)......................................................................26

Holborn Corp. v. Sawgrass Mut. Ins. Co.,
   304 F. Supp. 3d 392 (S.D.N.Y. 2018)......................................................................31

Int'l Council of Shopping Centers. v. Info Quarter, LLC,
   2018 U.S. Dist. LEXIS 152974 (S.D.N.Y. Sept. 7, 2018)................................37, 39

Kane ex rel. United States v. Healthfirst, Inc.,
   120 F. Supp. 3d 370 (S.D.N.Y. 2015)......................................................................20

Key Items v. Ultima Diamonds, Inc.,
   2010 U.S. Dist. LEXIS 84830 (S.D.N.Y. Aug. 17, 2010).........................................36

King Cnty. v. IKB Deutsche Industriebank AG,
   863 F. Supp. 2d 288 (S.D.N.Y. 2012)......................................................................32

King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.,
   2009 U.S. Dist. LEXIS 119934 (S.D.N.Y. Dec. 23, 2009) .......................................35

Klauber Bros. v. Russell-Newman, Inc.,
   2013 U.S. Dist. LEXIS 42758 (S.D.N.Y. Mar. 26, 2013) .........................................21

Kolbeck v. LIT Am., Inc.,
   939 F. Supp. 240 (S.D.N.Y. 1996)...........................................................................32

L.A. Cty. Emp. Ret. Ass'n v. Bank of N.Y. Mellon Corp (In re Bank of N.Y.
   Mellon Corp. False Claims Act Foreign Exch. Litig., ex rel. FX Analytics),
   851 F. Supp. 2d 1190 (N.D. Cal. 2012) ...................................................................16

L.A. Cty. Empl. Ret. Ass'n ex rel. FX Analytics v. Bank of N.Y. Mellon Corp. (In
   re Bank of N.Y. Mellon Corp. Forex Transactions Litig.),
   991 F. Supp. 2d 479 (S.D.N.Y. 2014)................................................................16, 17

Leveraged Leasing Admin. Corp. ex rel. Dweck v. Pacificorp Cap.,
   87 F.3d 44 (2d Cir. 1996) .........................................................................................44

Long Island Lighting Co. v. Stone & Webster Eng'g Corp.,
   839 F. Supp. 183 (E.D.N.Y. 1993) ...........................................................................31

Lopez v. Bonanza.com, Inc.,
   2019 U.S. Dist. LEXIS 170715 (S.D.N.Y. Sept. 30, 2019).......................................34

Ltd. v. Bank of N.Y. Mellon,
   2018 U.S. Dist. LEXIS 42865 (S.D.N.Y. Mar. 8, 2018) ...........................................31

AMERICAS 101661622

Ltd. v. U.S. Bank Nat'l Ass'n,
    741 F. App'x 857 (2d Cir. 2018) ..........................................................................31

Marino v. Grupo Mundial Tenedora, S.A.,
    810 F. Supp. 2d 601 (S.D.N.Y. 2011)...................................................................32

Mgr. Meats, Inc. v. Schweid,
    2012 U.S. Dist. LEXIS 181481 (E.D.N.Y. Dec. 21, 2012) ...................................34

Morris v. State Dep't of Taxation & Fin.,
    623 N.E.2d 1157 (N.Y. 1993)................................................................................39

Moses v. Martin,
    360 F. Supp. 2d 533 (S.D.N.Y. 2004)...................................................................39

N. Shipping Funds I, LLC v. Icon Capital Corp.,
    921 F.Supp.2d 94 (S.D.N.Y. 2013).......................................................................29

Nebraskaland, Inc. v. Sunoco, Inc.,
    2011 U.S. Dist. LEXIS 142127 (E.D.N.Y. July 13 2011) .....................................31

NetJets Aviation, Inc. v. LHC Commc'ns, LLC,
    537 F.3d 168 (2d Cir. 2008)..................................................................................39

NYKCool A.B. v. Pac. Fruit, Inc.,
    507 F. App'x 83 (2d Cir. 2013) ........................................................................20, 21

Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH
    S&B Holdings LLC),
    420 B.R. 112 (Bankr. S.D.N.Y. 2009)..................................................................39

Osan Ltd. v. Accenture LLP,
    454 F. Supp. 2d 46 (E.D.N.Y. 2006) ....................................................................28

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
    652 F. Supp. 2d 495 (S.D.N.Y. 2009)...................................................................33

People v. Bank of N.Y. Mellon Corp.,
    2013 N.Y. Misc. LEXIS 3470 (Sup. Ct. N.Y. Cty. Aug. 5, 2013) ...................13, 16

Reiss v. Fin. Performance Corp.,
    764 N.E.2d 958 (N.Y. 2001).................................................................................24

Riley v. Cuomo,
    2018 U.S. Dist. LEXIS 64535 (E.D.N.Y. Apr. 16, 2018) .....................................19

Robles v. Copstat Sec., Inc.,
    2009 U.S. Dist. LEXIS 112003 (S.D.N.Y. Dec. 2, 2009) ....................................36

vi

Roldan v. Second Dev. Servs.,
    2017 U.S. Dist. LEXIS 29135 (E.D.N.Y. Feb. 28, 2017)........................................38

Signature Apparel Grp. LLC v. Laurita (In re Signature Apparel Group LLC),
    2015 Bankr. LEXIS 671 (Bankr. S.D.N.Y. Mar. 4, 2015) .....................................41

Singh v. NYCTL 2009-A Trust,
    2016 U.S. Dist. LEXIS 94738 (S.D.N.Y. July 20, 2016) .......................................40

Southland Corp. v. Mir,
    748 F. Supp. 969 (E.D.N.Y. 1990) .........................................................................42

State ex rel. Grupp v. DHL Express (USA), Inc.,
    19 N.Y.3d 278 (N.Y. 2012) ......................................................................................9

In re Suffolk Reg'l Off-Track Betting Corp.,
    Case No. 12-43503-CEC (E.D.N.Y. Mar. 11, 2014).............................................29

Thomson-CSF, S.A. v. Am. Arbitration Ass'n,
    64 F.3d 773 (2d Cir. 1995)......................................................................................38

TNS Holdings Inc. v. MKI Sec. Corp.,
    703 N.E.2d 749 (N.Y. 1998)...................................................................................37

Two Kids from Queens, Inc. v. J&S Kidswear, Inc.,
    2010 U.S. Dist. LEXIS 10620 (E.D.N.Y. Feb. 8, 2010)...................................36, 38

U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.,
    45 N.Y.S.3d 11 (1st Dep't 2016) .............................................................................41

Uddoh v. United Healthcare,
    254 F. Supp. 3d 424 (E.D.N.Y. 2017) ....................................................................19

Uni-World Capital, L.P. v. Preferred Fragrance, Inc.,
    43 F. Supp. 3d 236 (S.D.N.Y. 2014).......................................................................30

Union Carbide Corp. v. Montell, N.V.,
    944 F. Supp. 1119 (S.D.N.Y. 1996)........................................................................39

United States ex rel. Chorches v. Am. Med. Response, Inc.,
    865 F.3d 71 (2d Cir. 2017)........................................................................................6

United States ex rel. Colucci v. Beth Isr. Med. Ctr.,
    785 F. Supp. 2d 303 (S.D.N.Y. 2011)......................................................................9

United States ex rel. Corp. Compliance Assocs. v. N.Y. Soc'y for the Relief of the
    Ruptured & Crippled, Maintaining the Hosp. for Special Surgery,
    2014 U.S. Dist. LEXIS 109786 (S.D.N.Y. Aug. 7, 2014)................................3, 5, 7

AMERICAS 101661622

United States ex rel. Forcier v. Comput. Scis. Corp.,
  183 F. Supp. 3d 510 (S.D.N.Y. 2016)....................................................................5, 6

United States ex rel. Gelbman v. City of New York,
  2018 U.S. Dist. LEXIS 169435 (S.D.N.Y. Sept. 30, 2018)....................................11

United States ex rel. Gelman v. Donovan,
  2017 U.S. Dist. LEXIS 156413 (E.D.N.Y. Sept. 25, 2017)....................................6

United States ex rel. Grubbs v. Kanneganti,
  565 F.3d 180 (5th Cir. 2009) ................................................................................6

United States ex rel. Grupp v. DHL Express (USA), Inc.,
  47 F. Supp. 3d 171 (W.D.N.Y. 2014) ..................................................................3

United States ex rel. Hussain v. CDM Smith, Inc.,
  2017 U.S. Dist. LEXIS 159538 (S.D.N.Y. Sept. 27, 2017)..............................11, 19

United States ex rel. Lee v. N. Adult Daily Health Care Ctr.,
  205 F. Supp. 3d 276 (E.D.N.Y. 2016) ................................................................14

United States ex rel. Lusby v. Rolls-Royce Corp.,
  570 F.3d 849 (7th Cir. 2009) ................................................................................6

United States ex rel. Panarello v. Kaplan Early Learning Co.,
  2018 U.S. Dist. LEXIS 39334 (W.D.N.Y. Mar. 8, 2018)....................................14

United States ex rel. Raffington v. Bon Secours Health Sys.,
  2019 U.S. Dist. LEXIS 156697 (S.D.N.Y. Sept. 13, 2019)..................................3

United States ex rel. Tessler v. City of New York,
  712 F. App'x 27 (2d Cir. 2017) ..........................................................................10

United States v. Chang,
  2017 WL 10544289 (C.D. Cal. July 25, 2017)...................................................8, 9

United States v. Dynamic Visions, Inc.,
  220 F. Supp. 3d 16 (D.D.C. 2016) ......................................................................40

United States v. Luce,
  873 F.3d 999 (7th Cir. 2017) ..............................................................................13

United States v. Triple Canopy, Inc.,
  857 F.3d 174 (4th Cir. 2017) ..............................................................................13

United States v. United Healthcare Ins. Co.,
  848 F.3d 1161 (9th Cir. 2016) ............................................................................6

AMERICAS 101661622

Universal Health Servs., Inc. v. United States ex rel. Escobar,
136 S. Ct. 1989 (2016) ............................................................................2, 12, 13, 14

White v. Nat'l Home Prot., Inc.,
2010 U.S. Dist. LEXIS 40414 (S.D.N.Y. Apr. 21, 2010)............................36, 38, 39

Winthrop-Univ. Hosp. Ass'n v. Sterling Servs. Grp., L.C.,
2009 U.S. Dist. LEXIS 142426 (E.D.N.Y. Mar. 31, 2009)......................................30

Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,
933 F.2d 131 (2d Cir. 1991)....................................................................................36

Wood ex rel. United States v. Applied Research Assocs.,
328 F. App'x 744 (2d Cir. 2009) ...............................................................................3

Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.,
802 N.Y.S.2d 411 (1st Dep't 2005) ........................................................................21

## STATUTES AND RULES

Fed. R. Civ. P. 8 ........................................................................................................9

Fed. R. Civ. P. 9 ........................................................................................................5

Fed. R. Civ. P. 12 ...........................................................................................1, 36, 41

NYFCA § 188 .......................................................................................10, 13, 19, 20

NYFCA § 189 .....................................................................................................18, 19

AMERICAS 101661622

Defendants hereby submit this Reply in further support of their Motion to Dismiss the Complaint (the "Motion" or "Mot.")[1] filed by Plaintiff Suffolk OTB.[2]

## PRELIMINARY STATEMENT

Suffolk OTB does not dispute that Jake's 58 has been an overwhelming success since it opened in 2017 under Delaware North Manager's management, delivering better than expected returns for Suffolk OTB's creditors and the State of New York.  Despite this success, Suffolk OTB wants to torpedo the parties' contractual arrangement.  Although it did not complain to Defendants or the Court when the parties' agreements were entered into, Suffolk OTB's Opposition makes clear that Suffolk OTB *never* liked the DMS Agreement.  See, e.g., Opp. ¶ 18 (claiming that it "had no other clear options to move forward" and "with making payroll hanging over its head, Suffolk OTB entered into the [DMS Agreement]").  This may explain why Suffolk OTB has been spoiling for an opportunity to put Delaware North "over a barrel," why its allegations are so inflammatory, and why it has loaded its complaint with unnecessary and legally defective claims.

In the Opening Brief, Defendants demonstrated that this case is, at best, a contract dispute between Suffolk OTB and Delaware North Manager under the Court-approved DMS Agreement and the Lease Agreement.  Suffolk OTB's attempt to repackage its claims under the "false claims act" or as breaches of fiduciary duty are without merit as a matter of law.  Defendants also

---

[1] The opposition filed by Suffolk OTB is referred to herein as "Opposition" or "Opp."  Capitalized terms not defined herein have the meanings ascribed to them in Defendants' Opening Brief ("Brief" or "Br.") [Dkt. No. 9].

[2] Suffolk OTB makes a halfhearted suggestion in a footnote that Defendants should have answered those parts of the Complaint that are not subject to the Motion.  See Opp. at 1 n. 2.  This is an incorrect statement of procedure in the Second Circuit.  See, e.g., In re Am. Express Anti-Steering Rules Antitrust Litig., 343 F. Supp. 3d 94, 98 (E.D.N.Y. 2018) ("[I]t is the majority rule among courts in the Second Circuit that the filing of any motion under Rule 12 postpones a defendant's time to answer.").

1

established that Suffolk OTB had failed to adequately plead unjust enrichment and various other equitable claims.  Suffolk OTB's Opposition fails to resuscitate these claims

Just as significantly, Defendants showed that Suffolk OTB had failed to identify ***any*** reason why Delaware North Manager's corporate parent, DNC, should be involved in this litigation. Instead, apart from conclusory allegations, Suffolk OTB relies only on impermissible group pleading and non-particularized references to "Defendants" in order to implead DNC, which has no contractual relationship with Suffolk OTB.

Defendants respectfully submit that the Motion should be granted in full.  In addition to being the appropriate treatment for Suffolk OTB's claims that are deficient as a matter of law, this will allow the parties to focus their efforts and discovery on the claims and defenses that remain in the relatively short period before trial, which is scheduled to begin July 13.  This is also the appropriate treatment for Suffolk OTB's legally infirm claims against DNC and DNC Gaming, which were included in the case for harassment purposes only.

## ARGUMENT

### I.      SUFFOLK OTB'S CLAIM UNDER THE NEW YORK FALSE CLAIMS ACT MUST BE DISMISSED

Suffolk OTB struggles mightily in the Opposition to reframe the parties' contractual accounting disputes as supposedly false claims under the New York False Claims Act (the "NYFCA").  Suffolk OTB's motivation to do so is transparent, given that the NYFCA provides treble damages.  But the NYCFA is not intended to cover garden-variety contractual disputes.  See Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 2003 (2016) (noting that the False Claims Act "is not a vehicle for punishing garden-variety breaches of contract or

regulatory violations")[3]; United States ex rel. Raffington v. Bon Secours Health Sys., 2019 U.S. Dist. LEXIS 156697, at *10 (S.D.N.Y. Sept. 13, 2019) (same); United States ex rel. Grupp v. DHL Express (USA), Inc., 47 F. Supp. 3d 171, 178 (W.D.N.Y. 2014) ("While the phrase 'false or fraudulent claim' in the False Claims Act should be construed broadly, it just as surely cannot be construed to include a run-of-the-mill breach of contract action that is devoid of any objective falsehood.").

### A.    Suffolk OTB Fails to Plead Its NYFCA Claim with Particularity

As shown in the Opening Brief, in order to sustain a NYFCA claim, Suffolk OTB must allege, at a minimum, some of the following details: "the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices …" United States ex rel. Corp. Compliance Assocs. v. N.Y. Soc'y for the Relief of the Ruptured & Crippled, 2014 U.S. Dist. LEXIS 109786, at *40 (S.D.N.Y. Aug. 7, 2014).  A false claims act claim fails where the complaint "does not cite to a single identifiable record or billing submission they claim to be false, or give a single example of when a purportedly false claim was presented for payment by a particular defendant."  Wood ex rel. United States v. Applied Research Assocs., 328 F. App'x 744, 750 (2d Cir. 2009).

Even though Suffolk OTB does not dispute that NYFCA claims must be pled with particularity, Opp. ¶ 44, the Opposition does not even try to direct the Court to a *single* identifiable

---

[3] As noted in the Brief, because the NYFCA is closely modeled on the federal False Claims Act, courts interpreting the NYFCA routinely rely on federal FCA precedents.  United States ex rel. Corp. Compliance Assocs. v. N.Y. Soc'y for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery, 2014 U.S. Dist. LEXIS 109786, at *32 (S.D.N.Y. Aug. 7, 2014).

AMERICAS 101661622

record or billing submission that it claims is false.  Instead, Suffolk OTB insists alternatively that (i) it has satisfied its burden because Suffolk OTB has supposedly alleged enough of the "who, what, when, where, and how" of the alleged fraud, id. ¶¶ 44-47, and (ii) in any event, it should be excused from the heightened burden since Suffolk OTB does not have access to information to plead its claims with particularity.  See id. ¶¶ 48-50.  Suffolk OTB is wrong on both fronts.

### 1.    Suffolk OTB Fails to Plead the Who, What, Where, When and How

At the outset, Suffolk OTB admits that it must plead the "who, what, where, when and how" of the alleged fraud.  Despite its conclusory assertions, Suffolk OTB has completely failed to allege any such specifics.  Nowhere in the Complaint or the Opposition has Suffolk OTB identified a *single* supposedly false claim with any level of particularity.  For example:

- The "*what*" – Suffolk OTB makes vague and conclusory allegations that "Delaware North" made "false claims and avoided obligations," Opp. ¶ 46, without alleging anything specific about how any "claim" was "false" or how a Delaware North entity had "avoided obligations."  Suffolk OTB claims that such "false claims" are "supported by statements such as change orders, construction plans, accounting statements, cost reconciliations, rent and utility invoices and other records and documents," id., but Suffolk OTB fails to provide any detail about those change orders or statements, or fails to cite to or include even one such document in its Complaint or Opposition.

- The "*who*" – not only does Suffolk OTB fail to provide any details of a single individual involved in even one purported "false claim," but it also fails to distinguish among DNC Gaming, Delaware North Manager and Delaware Properties.  See Br. at 16.

- The "*when*," "*where*," and "*how* " – the Complaint and Opposition provide nothing but conclusory and vague allegations.  For example, Suffolk OTB claims that it has identified "hundreds of thousands of dollars for a new kitchen from June-September 2017."  Opp. ¶ 46.  But Suffolk OTB never pleads *any* details about those "hundreds of thousands of dollars" – when that supposed claim was made, how that claim was supposedly made, or what form the claim supposedly took.  Simply alleging that there are "hundreds of thousands of dollars" in false claims over a four-month period relating to a "new kitchen" can hardly be considered to be a particularized allegation.

Suffolk OTB's references to erroneous change orders demonstrates the point.  Suffolk OTB purports to have uncovered "92 erroneous change orders."  See, e.g., Complaint ¶ 42, Opp. ¶ 56.

4

But Suffolk OTB does not plead the details of *any* of these 92 changes orders or what makes them "erroneous" or "false", other than such expenses were charged to Suffolk OTB instead of Delaware North Manager, which Suffolk OTB claims is in breach of the DMS Agreement. See N.Y. Society for the Relief of the Ruptured & Crippled, 2014 U.S. Dist. LEXIS 109786, at *34 (dismissing FCA claim that failed to allege the "particulars of the false claims themselves" under Rule 9(b)).[4] Simply claiming to have "92 erroneous orders" without pleading a single detail about those orders or why they are false is insufficient to state a claim under the NYFCA.

The reason that Suffolk OTB cannot allege such particularized details is simple: no false claims have been made to Suffolk OTB. Instead, there are certain construction costs that were incurred in connection with Jake's 58—costs that Suffolk OTB does not allege were false or fraudulent in and of themselves—that Suffolk OTB thinks should have been allocated to Delaware North Manager instead of Suffolk OTB. Delaware North Manager disagrees, and thus the parties have a regular contract dispute regarding the appropriate allocation of costs under the terms of the parties' agreement. Suffolk OTB's attempt to repackage these disputes as fraud claims—in a transparent attempt at treble damages—should not be permitted.

## 2.    Suffolk OTB Is Not Entitled to a Lowered Pleading Standard

Realizing that it cannot plead its NYFCA claims with any level of specificity, Suffolk OTB next claims that it should be excused from the particularity requirement because Suffolk OTB is at an informational disadvantage. Suffolk OTB claims that it would "not be appropriate [ ] to

---

[4] Citing to United States ex rel. Forcier v. Comput. Scis. Corp., 183 F. Supp. 3d 510, 521 (S.D.N.Y. 2016), Suffolk OTB claims that "Rule 9(b) does not call for plaintiffs to plead every conceivable fact about the claims they allege were fraudulent, or to prove its claims at the pleading stage." Opp. ¶ 44. But Forcier shows just how deficient Suffolk OTB's pleading is. In that case, the plaintiff relied on "example claims[.]" Id. at 521. The Forcier plaintiff had also provided "sufficient information" to enable the defendant to "identify the allegedly fraudulent claims it must defend against[.]" Id. at 522. Here, SOTB has failed to include a *single* "sample claim" and has not provided any details of the Defendants' alleged fraudulent behavior.

AMERICAS 101661622

require Suffolk OTB to plead each expense of Delaware North's hotel business that was improperly charged to Suffolk OTB." Opp. ¶ 48. The cases cited by Suffolk OTB to support its claim for a lower pleading standard, however, are all inapposite, as they all involve <u>qui tam</u> actions where the plaintiff was not the party who received the supposedly false claims.

For example, Suffolk OTB relies heavily on <u>United States ex rel. Chorches</u> v. <u>Am. Med. Response, Inc.</u>, 865 F.3d 71, 86 (2d Cir. 2017), for the proposition that "a complaint can satisfy Rule 9(b)'s particularity requirement by making plausible allegations creating a strong inference that specific false claims were submitted to the government and that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge." Opp. ¶ 50. But the plaintiff in the <u>Chorches</u> case was not the government entity involved in the transactions like Suffolk OTB is here. Instead, the plaintiff was a <u>qui tam</u> relator, which is by definition not the government entity that received the alleged false claims. <u>See</u> <u>Chorches</u>, 865 F.3d at 81. It was only in that specific <u>qui tam</u> context that the court excused the plaintiff's generalized allegations and found that the plaintiff "ha[d] pled the submission of false claims with sufficient particularity under Rule 9(b), ***as applied in the qui tam context.***" <u>Id.</u>, 865 F.3d at 75 (emphasis added). The court even cautioned that such a standard "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations" and stated that "those who ***can*** identify examples of actual claims ***must*** do so at the pleading stage." <u>Id.</u>, 865 F. 3d at 86 (emphasis in original).[5]

---

[5] <u>See</u> <u>also</u> <u>United States ex rel. Grubbs</u> v. <u>Kanneganti</u>, 565 F.3d 180, 190 (5th Cir. 2009) (<u>qui tam</u> case discussing "a ***relator***'s complaint . . . [that] ***cannot*** allege the details of an actually submitted false claim") (emphasis added); <u>United States</u> v. <u>United Healthcare Ins. Co.</u>, 848 F.3d 1161, 1182 (9th Cir. 2016) (<u>qui tam</u> case that still dismissed "general allegations, lacking in similar details"); <u>United States ex rel. Gelman</u> v. <u>Donovan</u>, 2017 U.S. Dist. LEXIS 156413, at *16 (E.D.N.Y. Sept. 25, 2017) (<u>qui tam</u> case stating "In <u>Chorches</u>, however, the Second Circuit announced a different standard for qui tam FCA suits"); <u>United States ex rel. Forcier</u> v. <u>Computer Scis. Corp.</u>, 183 F. Supp. 3d 510, 521 (S.D.N.Y. 2016) (<u>qui tam</u> suit allowed to proceed because sample claims pled); <u>United States ex rel. Lusby</u> v. <u>Rolls-</u>

Here, Suffolk OTB has asserted that it has the ability to plead the actual false claims if it wants to.  For example, Suffolk OTB expressly pleads that it is a "local government" under the NYFCA, Complaint ¶ 102; Opp. ¶ 3.  Suffolk OTB even disavows the lenient standards that apply in qui tam cases, arguing that "[t]his is not a *qui tam* suit in which a private individual is speculating about what is material to the government. This case is the government initiating a direct civil enforcement action alleging that it would not have paid claims or allowed Delaware North to retain money related to its private business."  Opp. ¶ 62.

Moreover, Suffolk OTB claims that "Delaware North submits demands and requests for payments ***to Suffolk OTB*** for reimbursement for Expenses from Suffolk OTB's bank account." Id. ¶ 4 (emphasis added).  That is, by Suffolk OTB's own admission, Suffolk OTB is the recipient of the alleged "false" claims.  See Complaint ¶¶ 63, 69.  But despite being the recipient of false "demands and requests for payments," Opp. ¶¶ 4, 64, SOTB has failed to include or identify the details of ***any*** such "false" demand or request with its Complaint.  Accordingly, the relaxed pleading standard permitted in the qui tam context does not apply to Suffolk OTB.

### B.    Suffolk OTB Admits That It Relies on Group Pleading

As demonstrated in the Opening Brief, the Complaint does not make any attempt to differentiate among the Defendants or identify which Defendant supposedly committed which alleged violation.  This is insufficient under the NYFCA.  See Br. at 15-16; N.Y. Soc'y for the Relief of the Ruptured & Crippled, 2014 U.S. Dist. LEXIS 109786, at *58.

In the Opposition, Suffolk OTB does not dispute that the Complaint is premised on group pleading, but instead claims that such group pleading should be excused because "there can be no

---

Royce Corp., 570 F.3d  849, 854 (7th Cir. 2009) (qui tam suit where court's ruling premised on fact that "a ***relator*** is unlikely to have" the actual claims) (emphasis added).

serious contention that any Defendant is in the dark about the nature of the claims made against it…" Opp. ¶ 51. Suffolk OTB also claims that its group pleading should be forgiven because "Suffolk OTB is not aware of which of the closely-held and interrelated Delaware North entities are technically responsible for the actual submission of every false claims and statement." Id. ¶ 52. Both of these arguments are meritless.

First, contrary to Suffolk OTB's suggestion, the prohibition against group pleading does not exist simply to make sure that each defendant is aware of the "nature of his alleged participation in the fraud." Id. ¶ 51. Group pleading under Rule 9(b) is also prohibited in order to protect a "defendant from harm to his reputation or goodwill." DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987). That is exactly the case here, where Suffolk OTB has named Delaware North Manager's corporate parent, DNC, solely as a harassment tactic, even though Suffolk OTB knows that its contractual relationship is only with Delaware North Manager and DNC Gaming.

Second, Suffolk OTB suggests that it does not know which entity is "technically responsible for the actual submission" of supposedly false claims. Opp. ¶ 24. This is disingenuous. Suffolk OTB has pled that it receives false claims, and it obviously knows that its counterparties to the DMS Agreement are Delaware North Manager and, for limited purposes, DNC Gaming. Suffolk OTB has not pled any credible allegations that any entity *other* than its contractual partner, Delaware North Manager, has had any role in the operations of Jake's 58. It cannot credibly claim that it does not know from whom it received those claims, simply because it hopes to implead a corporate parent. Opp. ¶ 52.[6]

---

[6] The cases that Suffolk OTB claims support its position regarding its group pleading are inapposite. For example, United States v. Chang, 2017 WL 10544289, at *15 (C.D. Cal. July 25, 2017), is an out-of-circuit case involving qui tam plaintiffs, which is inapplicable here. See Reply supra at Section I.A.2. The Chang court also noted that the plaintiff "specifically ties the bases of [ ] several claims to the allegedly tortious individual defendants," which Suffolk

### C.    Suffolk OTB Fails to Adequately Plead Knowledge, Falsity, or Materiality

#### 1.    Suffolk OTB Fails to Adequately Plead Knowledge

In its Opposition, Suffolk OTB asserts that it has satisfied its "rigorous" burden of pleading knowledge because it intones, in conclusory form, that "Delaware North" (undefined) has "engaged in a knowing, intentional, and bad faith pattern of enriching itself," including by submitting "92 erroneous change orders" that all favored Delaware North.[7]  Opp. ¶ 56.  Such language is wholly conclusory and does nothing to show that any Delaware North entity engaged in knowing misconduct.

The point of the NYFCA is to deter and compensate for knowingly false claims against the government.  State ex rel. Grupp v. DHL Express (USA), Inc., 19 N.Y.3d 278, 286 (N.Y. 2012) ("The [NYFCA] … evinces a broader punitive goal of deterring fraudulent conduct against the State.").  It is not to punish "erroneous" change orders, mistakes, or differences of opinion on how a cost should be allocated.  United States ex rel. Colucci v. Beth Isr. Med. Ctr., 785 F. Supp. 2d 303, 316 (S.D.N.Y. 2011) (holding the FCA "is intended to punish only 'wrongdoing,' not honest mistakes").  Suffolk OTB fails to allege any *facts* that support any knowingly false or fraudulent conduct on the part of Delaware North entity; it just repeats the words "knowing" and "intentional" over and over.   A NYFCA claim cannot be permitted to go forward without particularized allegations that there has been a knowing fraud.  Id. at 317 (dismissing an FCA claim where there were not allegations "to support an inference that defendants committed the kind of knowing

---

OTB has failed to do here.  Id. at *16 n.11.  And the court ultimately dismissed the plaintiff's claim and "strongly urge[d] Relators to provide more specificity in their amended complaint [] that will clarify whether the claim is intended to be directed at all or only some of the Defendants."  Id.  Similarly inapposite is Gao v. JPMorgan Chase & Co., 2015 WL 3606308, at *6 (S.D.N.Y. June 9, 2015), which involved claims that were subject to the lesser pleading standard of Fed. R. Civ. P. 8 and not Rule 9(b).

[7] Suffolk OTB's repeated references to 92 erroneous change orders that "all favored Delaware North" is circular. Presumably, if a change order favored Suffolk OTB, Suffolk OTB would not consider it to be "erroneous."

'wrongdoing' the FCA is intended to remedy").  No such allegations exist here and the claim should be dismissed.

### 2.    Suffolk OTB Fails to Adequately Plead Falsity

The Opening Brief showed that Suffolk OTB failed to allege with any specificity what is supposedly "false" about any claim that it received from any Defendant.  Suffolk OTB merely alleges that Delaware North Manager allocated costs to Suffolk OTB that it claims should have been borne by Delaware North Manager, which does nothing to support an inference that these supposed costs or charges were false or fraudulent.  See United States ex rel. Tessler v. City of New York, 712 F. App'x 27, 30 (2d Cir. 2017) (affirming dismissal of FCA claims where complaint merely asserted legal conclusions that were insufficient to meet FCA scienter requirements).  In response, Suffolk OTB asserts that it can proceed with a NYFCA claim even where it cannot show something is actually false (i.e., "factual falsity),[8] so long as it can show "legal falsity."  Opp. ¶ 58.  Under a theory of "legal falsity," "the party submitting the claim falsely represents (or 'certifies') compliance with a statute, regulation, or contractual provision."  Id.  This theory has no application to the current case.

As an initial matter, Suffolk OTB acknowledges that legal falsity requires either express or implied certification, id., but purposely obfuscates which theory of certification it relies upon here. In the Complaint, Suffolk OTB argues there was an express certification, alleging that a Defendant

---

[8] Suffolk OTB appears to have abandoned its theory of factual falsity altogether.  In any event, any such theory would be deficient, because at no point in either the Complaint or in the Opposition has Suffolk OTB alleged that any of the Defendants have "billed for service" that "was either not provided or not described truthfully."  For instance, Suffolk OTB claims that "Delaware North knowingly and/or recklessly submitted a series of claims to Suffolk OTB for hundreds of thousands of dollars to construct a brand new kitchen to service its hotel and restaurant business at the Islandia Property."  Complaint at ¶ 38(a)  However, Suffolk OTB does not claim that Defendants have billed for construction services that were "either not provided or not described truthfully."  In its Opposition, Suffolk OTB claims that "[e]very time Delaware North submitted a claim for payment to Suffolk OTB, those claims contained representations about the goods and services provided (such as payment codes or description of charges)" but does not allege that "Delaware North" included the incorrect "payment codes" or "description of charge" or that "Delaware North" had inflated the costs attributable to a particular service or activity. See Opp. at ¶ 59.

AMERICAS 101661622

(Suffolk OTB does not identify which one) made an "express false certification" to Suffolk OTB. Complaint ¶ 105.  Suffolk OTB does not allege any detail about that express certification: what it looks like, where it was made, which law or contractual provision was implicated, or which Delaware North entity and individual was involved in such certification.  Suffolk OTB's failure to "point[] to a single affirmative statement" by any Defendant "that it complied with a statute or contract" is fatal to its claim because "[w]ithout an express certification, there is no express certification claim."  United States ex rel. Hussain v. CDM Smith, Inc., 2017 U.S. Dist. LEXIS 159538, at *17-18 (S.D.N.Y. Sept. 27, 2017).[9]

In the Opposition, Suffolk OTB makes no reference to its theory of "express false certification," instead shifting gears to argue that some unspecified Defendant made an "implied false certification."  See, e.g., Opp. ¶ 26 ("They each contained implied certifications that the various goods and services were charged to Suffolk OTB in compliance with the DMS Agreement"); id. ¶ 31 ("These false records contained implied certifications…"); id. ¶ 64 ("Such demands and requests contain an implied false certification that the amount requested is in compliance with the DMS Agreement…").  The implied false certification theory is not alleged anywhere in the Complaint.

Suffolk OTB's failure to distinguish which theory of certification it is asserting in the Complaint alone warrants dismissal.  Indeed, case law holds that failure to "distinguish between the legal standards governing implied and express certifications" and to "specify which theory is being pursued" is itself "a basis to dismiss the legally false claims."  United States ex rel. Gelbman

---

[9] Suffolk OTB also fails to demonstrate that any purported express false certification by any of Defendants was material to any payment decision by it.  See Bishop v. Wells Fargo & Co., 870 F.3d 104, 107 (2d Cir. 2017) (remanding a case pertaining to an express false certification allegation because "[t]he materiality standard set out in [U.S. Supreme Court decision] Escobar has not been applied in the present case.")

v. City of New York, 2018 U.S. Dist. LEXIS 169435, at *17 (S.D.N.Y. Sept. 30, 2018) (dismissing FCA claims under all three potential theories of falsity).

Moreover, even assuming that Suffolk OTB is pursuing a theory of implied certification, its argument fails.  Implied certification requires two conditions: "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." Escobar, 136 S. Ct. at 2001.  Here, because Suffolk OTB has failed to plead the existence of a "claim," see Br. at 19-22, it also cannot allege what "specific representations" any Defendant made in any such "claim."  In addition, there is no suggestion that the description of the good and services set forth in, for example, the change orders, was anything but accurate.  Further, Suffolk OTB has failed to allege with any particularity that any Defendant failed to disclose noncompliance with "material statutory, regulatory, or contractual requirements" which "made those representations misleading half-truths." Escobar, 136 S. Ct. at 2001.  Thus, Suffolk OTB is unable to satisfy either prong of an implied certification theory.

### 3.    Suffolk OTB Fails to Adequately Plead Materiality

Suffolk OTB acknowledges that it must "present concrete allegations" from which the Court can reasonably infer that any alleged misrepresentations were material to Suffolk OTB's payment decisions.  Opp. ¶ 60, Br. at 18.  Suffolk OTB fails to make such allegations.

Suffolk OTB admits that it has been paying the supposedly false claims since December 2016, even though it was provided monthly accounting statements showing precisely how Delaware North Manager was accounting for all expenses.  See Complaint, ¶¶ 38, 63, 69, 105(a); Opp. ¶¶ 31, 46, 59, 72.  As the Supreme Court has held, "if the Government pays a particular claim

12

in full [] [o]r, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." See Escobar, 136 S. Ct. at 2003-04.

Faced with this fact, Suffolk OTB attempts to deflect by making conclusory allegations about its "concern[]" and purported "confront[ations]" with "Delaware North." However, Suffolk OTB cannot refute the fact that it never contemporaneously resisted any purported "overcharge." See Complaint ¶¶ 40-41, 60, 80, 90, 98, 105, 107; Opp. ¶¶ 60-62. And the only time Suffolk OTB mentions a time-period is in the context of "sewage charges." Complaint ¶ 70. And even there, Suffolk OTB alleges that it was overcharged "from March 2018 through March 2019" and admits that it only purportedly "confronted Delaware North" "around" "April 2019." Complaint ¶¶ 69-70. Suffolk OTB's argument that its initiation of this lawsuit demonstrates materiality, if credited, would completely nullify the purpose of the NYFCA's requirement to show materiality to a payment obligation. See NYFCA §§ 188, 189;[10] Escobar, 136 S. Ct. at 2003; People v. Bank of N.Y. Mellon Corp., 2013 N.Y. Misc. LEXIS 3470, at *98-99 (Sup. Ct. N.Y. Cty. Aug. 5, 2013).

Further, to the extent that Suffolk OTB is pursuing an "implied certification" theory, the Supreme Court has noted that "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment." Escobar, 136 S. Ct. at 2001. Moreover, "misrepresentation cannot be deemed material merely because the Government

---

[10] The out-of-circuit cases that Suffolk OTB cites only underline the deficiencies in this argument. For example, in United States v. Luce, 873 F.3d 999 (7th Cir. 2017), the court held that the materiality requirement was met not because the government plaintiff instituted proceedings, but because the government demonstrated that the false certification at issue was material to its payment obligation. Id. at 1007 (false certification constituted "lies that addressed a foundational part of the Government's mortgage insurance regime, which was designed to avoid the systemic risk posed by unscrupulous loan originators"). As already shown, Suffolk OTB has entirely failed to plead why any purported noncompliance by Defendants was material to Suffolk OTB or any of the Defendants' purported payment obligation. See Reply, supra Section I.C. Similarly, in United States v. Triple Canopy, Inc., 857 F.3d 174 (4th Cir. 2017), the government plaintiff had "successfully alleged falsity" and shown that that was a "material falsehood [] capable of influencing the [g]overnment's decision to pay." Triple Canopy, 857 F.3d at 178.

13

designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial." Id. at 2003.  Here, Suffolk OTB has not alleged (and cannot allege) with particularity that any supposed certification that any Defendant made was material to any payment made by Suffolk OTB.

Finally, Suffolk OTB's submission that "materiality is a quintessential issue of fact not appropriate for dismissal" is simply wrong.  Opp. ¶ 62.  The Supreme Court has rejected the "assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment." Escobar, 136 S. Ct. at 2004 n.6.  The Supreme Court further said that "False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality." Id.  Courts in the Second Circuit routinely dismiss FCA claims for failure to present a plausible case of materiality.  See, e.g., United States ex rel. Panarello v. Kaplan Early Learning Co., 2018 U.S. Dist. LEXIS 39334, at *6-7 (W.D.N.Y. Mar. 8, 2018) (finding "broad allegation[s]" did not plausibly allege materiality); United States ex rel. Lee v. N. Adult Daily Health Care Ctr., 205 F. Supp. 3d 276, 296 (E.D.N.Y. 2016).

## D.    Suffolk OTB Has Failed to Plead the Existence of a "Claim" as Required by §§ 189(1)(a) and (b)

There is another overarching deficiency in Suffolk OTB's claim under the NYFCA: no Defendant ever makes a "claim" to Suffolk OTB.  Instead, Delaware North Manager allocates certain costs to itself, and other costs to Suffolk OTB, and then pays those costs accordingly.  This is not a factual dispute; the arrangement is provided by the clear terms of the DMS Agreement.

14

Accordingly, Delaware North has never made a "claim for payment" to Suffolk OTB within the meaning of Sections 189(1)(a) and (b).

In response, Suffolk OTB claims that Sections 7.02.3 and 8.01 of the DMS Agreement provide support for Suffolk OTB's contention that "periodically, Delaware North submits demands and requests for payments to Suffolk OTB for reimbursement of Expenses and payment of its Management Fee from Suffolk OTB's account." Opp. ¶ 64. This statement is a misrepresentation of the DMS Agreement. Paragraph 7.02.3 is entitled "Application of Gross Revenues" and simply describes the waterfall for how distributions are made to all creditors of Suffolk OTB from the revenues of Jake's 58's gaming operations, including Delaware North Manager. See DMS Agreement § 7.02.3. It says *nothing* about Delaware North Manager submitting *any* demand or request for payment to Suffolk OTB.

Suffolk OTB also claims these non-existent demands or requests for payment "contain an implied false certification that the amount requested is in compliance with the DMS Agreement," but as shown above, this assertion is incorrect. Opp. ¶ 65. If Suffolk OTB had in its possession a single demand from any Defendant that included a false certification, it would have included it in its Complaint. The absence of such an allegation is fatal.

Suffolk OTB next struggles to distinguish the <u>Bank of New York Mellon</u> cases which are directly on point. See Opp. ¶ 65. Suffolk OTB argues that, unlike the plaintiffs in the <u>Bank of New York Mellon</u> cases, Suffolk OTB "did not turn over its money to Delaware North in advance of any claim" because "[t]he money is in Suffolk OTB's account at the Bank." This is a distinction without a difference. As the DMS Agreement provides, Delaware North Manager is not required to make a request or demand or make a claim to Suffolk OTB before remitting money to the Gaming Commission or towards expenses, the two categories of remittances that Suffolk OTB

15

attacks in the Complaint.  <u>See</u> DMS Agreement, §§7.01, 7.02, 8.01.  The key fact is that both Delaware North Manager and the defendants in <u>Bank of New York Mellon</u> cases had the ability to spend the plaintiff's funds in accordance with their contractual arrangement without first consulting the plaintiff.  Similar to the BNYM cases, Delaware North Manager "did not consult with or contact the government [] in any way prior to" remitting the money.  <u>L.A. Cty. Emp. Ret. Ass'n</u> v. <u>Bank of N.Y. Mellon Corp (In re Bank of N.Y. Mellon Corp. False Claims Act Foreign Exch. Litig., ex rel. FX Analytics)</u>, 851 F. Supp. 2d 1190, 1194  (N.D. Cal. 2012).  Just like how Delaware North Manager never needs to request, demand, or make a claim to Suffolk OTB before remitting money, BNYM too had "standing authorizations to execute" transactions.  <u>See</u> <u>Bank of N.Y. Mellon Corp.</u>, 2013 N.Y. Misc. LEXIS 3470,at *1-2.[11]

In fact, the BNYM cases contemplate the exact arrangement as the present situation.  One court determined that "withdrawal of money from the [government's] account" does ***not*** amount to a demand for payment and is not a claim "within the meaning of New York State FCA Sections 189(1)(a) and (1)(b)."  <u>Id.</u> at *924-95.  The BNYM cases make it clear that any accounting statement or similar document reflecting such withdrawals does not constitute a claim.  These statements "contain[] no requests for action or payment by the client, as the client's account already had been debited or credited."  Br. at 20.[12]

---

[11] <u>See</u> <u>also</u> <u>L.A. Cty. Empl. Ret. Ass'n ex rel. FX Analytics</u> v. <u>Bank of N.Y. Mellon Corp. (In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.)</u>, 991 F. Supp. 2d 479, 483-85, 491-92 (S.D.N.Y. 2014); <u>L.A. Cty. Empl. Ret. Ass'n v. Bank of N.Y. Mellon Corp (In re Bank of N.Y. Mellon Corp. False Claims Act Foreign Exch. Litig., ex rel. FX Analytics)</u>, 851 F. Supp. 2d 1190, 1193-95, 1196-97 (N.D. Cal. 2012); <u>Commonwealth ex rel. FX Analytics</u> v. <u>Bank of N.Y. Mellon</u>, 84 Va. Cir. 473, 474-75, 476-78 (Va. Cir. Ct. 2012).

[12] The BNYM cases further refute Suffolk OTB's argument that "statements and records of accounting activities are false statements in support of the false claims that violate Section 189(1)(b)."  Opp. ¶ 66.  Suffolk OTB has failed to plead the existence of a 'claim.'  The NYFCA makes it clear that there can be no 'false statement' if there is no 'claim.'  NYFCA §§ 189(1)(a)-(b).  "A false statement triggers liability only if the defendant 'intend[s] the Government to rely on that false statement as a condition of payment.'"  <u>Bank of N.Y. Mellon</u>, 84 Va. Cir. at 478 (Va. Cir. Ct. 2012).  "[L]iability cannot be triggered [] when] there is no request that the Commonwealth pay a false claim."  <u>Id.</u>

Suffolk OTB finally attempts to distinguish the BNYM cases by citing this statement from In re Bank of New York Mellon Corp. Forex Transactions Litig., 991 F. Supp. 2d at 491: "Surely [the statutory analogues to 189(a) and (b)] do not require a formal invoice for liability to attach; conduct amounting to an implicit request may be sufficient." Opp. ¶ 67. Suffolk OTB omits the very next sentence of this case which underscores the fatal defects to the claims here: "***But that is not this case***." Bank of N.Y. Mellon Corp. (In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.), 991 F. Supp. 2d at 491. (emphasis added). Suffolk OTB asserts that "it is common sense that money held in one bank account (Suffolk OTB's) cannot go to another bank account (Delaware North's) without a request or demand for the transfer of funds…" Opp. ¶ 67. But Suffolk OTB has not shown, and cannot show, that any request or demand was made ***to Suffolk OTB*** to effectuate the "common sense" transfer of funds that it alleges, and that is what the law under the NYFCA requires.

### 1.      Suffolk OTB Has Failed to Plead "Presentment"

In the Opening Brief, Defendants pointed out that the Complaint also does not adequately plead "presentment," which is another requirement for a NYFCA claim. In response, Suffolk OTB only makes conclusory statements to argue that any claims were presented to the government. This merely underscores its pleading deficiencies. For example, Suffolk OTB attempts to embellish its Complaint with a new, inaccurate allegation that "Delaware North presents these claims in the form of ACH electronic transfer requests to Suffolk OTB." Opp. ¶ 68. This allegation is not in the Complaint and should not be credited, but in any event, Suffolk OTB does not allege or provide any legal support for how an ACH electronic transfer request from one bank to another bank constitutes presentment of a claim under the NYFCA. And, of course, if Suffolk OTB had actually

AMERICAS 101661622

been "presented" with a claim under the NYFCA, it would have pled the details of that claim in its Complaint or Opposition. The fact that it did not is dispositive.

### E.    Suffolk OTB Has Failed to Plead "Delivery" as Required by § 189(1)(d)

Suffolk OTB claims it has satisfied § 189(1)(d) of the NYFCA, which imposes liability on any person who has control of property owned by the government but who knowingly "delivers, or causes to be delivered, less than all of that money or property." See Opp. ¶ 70. Suffolk OTB's argument is that "Delaware North" should have delivered all of the gross revenue of the hotel business (which under the terms of the DMS Agreement is solely Delaware North Manager's) to Suffolk OTB, as it claims that "Delaware North" has asserted that Suffolk OTB "should bear the expenses of Delaware North's hotel (for example), because it is part of the Business." Opp. ¶ 70. This argument is too cute by half. Defendants do not argue that all of the expenses of the hotel business should be borne by Suffolk OTB, as Suffolk OTB knows. Instead, Defendants only argue that those expenses that are expressly delineated under the DMS Agreement as applying to both the hotel *and* the gaming operations should be borne by Suffolk OTB, pursuant to the unambiguous terms of the contract. See infra at Section II.

### F.    Suffolk OTB Has Failed to Plead a Violation Under § 189(1)(g)

In the Opening Brief, Defendants showed that the basis for a reverse false claim allegation cannot be exactly the same as the basis for the claim under NYFCA Section 189(1)(a). See Br. at 22-23. Suffolk OTB does not refute this, and indeed admits that its basis for a reverse false claim is exactly the same as its basis for its claim under Section 189(1)(a). Opp. ¶ 72 ("If Delaware North is right and it does not actually make 'claims' and instead it holds the money and does not pay Suffolk OTB the right amount, it violates the 'reverse false claim' provisions of the Act.")

18

In any event, under the terms of the DMS Agreement, no Defendant owes any "obligation to pay or transmit money" to Suffolk OTB.  See NYFCA §§ 188(4), 189(1)(g).  As Suffolk OTB admits, "[t]he money is in Suffolk OTB's account at the Bank."  Opp. ¶ 65.  Delaware North Manager simply performs its contractual obligation of transmitting money towards payment of expenses and to the Gaming Commission.  DMS Agreement, §§ 5.02(a), 7.02).  See also United States ex rel. Hussain v. CDM Smith, Inc., 2017 U.S. Dist. LEXIS 159538, at *24-25 (S.D.N.Y. Sept. 27, 2017) (dismissing reverse false claim under FCA analogue of NYFCA 189(1)(g) and (h), reasoning that "[a] complaint that makes no mention of any financial obligation that the [defendant] owed to the government and does not specifically reference any false records or statements used to decrease such an obligation must be dismissed."); Bank of N.Y. Mellon Corp., 2013 N.Y. Misc. LEXIS 3470 at *95-101 (dismissing reverse false claim, observing that the "obligation necessary to support reverse false claim liability must arise from a source independent of the allegedly fraudulent acts taken to avoid it, and must pre-exist the false statements themselves" and that "while an obligation sufficient to support reverse false claim liability may arise under a contract, the mere fact that breach of a contractual obligation is alleged is not sufficient to plead a reverse false claim.")

### G.    Suffolk OTB's New Claim Under § 189(1)(h) Is Improper and Deficient

For the first time in its Opposition, Suffolk OTB asserts a new basis for liability under NYFCA § 189(1)(h).  See Opp. ¶71.  This claim was never raised in the Complaint and should not be considered.  Riley v. Cuomo, 2018 U.S. Dist. LEXIS 64535, at *3 (E.D.N.Y. Apr. 16, 2018) ("[A] plaintiff is not permitted to amend his complaint by virtue of what is said in a memorandum of law."); Uddoh v. United Healthcare, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a

motion to dismiss …"); Bowen v. Baldwin Union Free Sch. Dist., 2018 U.S. Dist. LEXIS 151204, at *20 n.2 (E.D.N.Y. Aug. 31, 2018) (rejecting plaintiff's attempt to add a new statutory provision as a basis to oppose a motion to dismiss when complaint involved related statutory provision).

Regardless, SOTB's claim under Section 189(1)(h) is without merit.  As discussed above, Defendants do not owe any "obligation to pay or transmit money" to Suffolk OTB.  See NYFCA §§ 188(4), 189(1)(h).  Further, SOTB does not even attempt to show that Defendants "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decreas[ed]" any purported obligation "or [that they] conspire[d] to do the same[.]"  They only offer conclusory allegations.[13]

## II.    SUFFOLK OTB HAS FAILED TO STATE A CLAIM FOR A BREACH OF THE DMS AGREEMENT

### A.    Suffolk OTB Fails to Plead any Plausible Allegations against DNC Gaming

As Defendants showed in their Opening Brief, Suffolk OTB has not alleged a single breach of the DMS Agreement by DNC Gaming because DNC Gaming is not subject to the provisions of the DMS Agreement that are at issue in this case.  See Br. at 24.  Suffolk OTB does not dispute this point.  Instead, it argues that DNC Gaming is liable for Delaware North Manager's alleged breaches under "settled rules" of joint and several liability.  Opp. ¶ 74.

As the cases cited by Suffolk OTB make clear, joint and several liability only attaches where, unlike here, two or more contracting parties take on the *same* contractual obligation.  See, e.g., NYKCool A.B. v. Pac. Fruit, Inc., 507 F. App'x 83, 87 (2d Cir. 2013) (cited in Opp. ¶ 74) ("Where two or more parties to a contract *promise the same performance to the same promisee*,

---

[13] Suffolk OTB cites to Kane, but omits to mention that the Kane court denied a motion to dismiss the reverse false claim because the "Government ha[d] adequately pleaded that [d]efendants avoided returning the overpayments." Kane ex rel. United States v. Healthfirst, Inc., 120 F. Supp. 3d 370, 394 (S.D.N.Y. 2015).  The Kane plaintiffs had provided the exact date on which the defendant had first become aware of the issues underlying the claim, had adequately alleged that the defendants had fired the *qui tam* plaintiff who had investigated the issue, that the defendants had done nothing with the plaintiff's investigatory findings, and had even neglected to repay "more than 300 claims" until "June 2012." Kane, 120 F. Supp. 3d at 394.  Suffolk OTB's allegations do not even come close to these.

AMERICAS 101661622

each is bound for the whole performance thereof, whether his duty is joint, several, or joint and several.") (emphasis added); <u>Wujin Nanxiashu Secant Factory</u> v. <u>Ti-Well Int'l Corp</u>., 802 N.Y.S.2d 411, 414 (1st Dep't 2005) (cited in Opp. ¶ 74) ("Settled rules governing the interpretation of contracts provide that when two or more entities *take on an obligation*...they do so jointly….") (emphasis added).  It is hornbook law, however, that contracting parties cannot be liable for each other's breaches where they have separate and distinct contractual obligations, like here.  <u>See</u> <u>Klauber Bros.</u> v. <u>Russell-Newman, Inc</u>., 2013 U.S. Dist. LEXIS 42758, at *9 (S.D.N.Y. Mar. 26, 2013) (dismissing breach of contract claim as to defendant Bon-Ton where "the plain language of the Settlement Agreement specifically assigns separate obligations to [defendants] Russel-Newman and Bon-Ton," and the allegedly breached provision did not impose obligations on Bon-Ton).[14]

Suffolk OTB next argues that its breach of contract claim cannot be dismissed as to DNC Gaming on the basis of a "whereas" clause which states that DNC Gaming signed the DMS Agreement solely to guarantee certain payments not at issue in this case.  Opp. ¶ 75.  The whereas clause simply confirms that none of the sections of the DMS Agreement that Suffolk OTB claims were breached impose any obligations on DNC Gaming.  <u>See</u> Br. at 24; <u>see also</u> <u>Ariston Props., LLC</u> v. <u>Messer (In re FKF 3, LLC)</u>, 501 B.R. 491, 506 (S.D.N.Y. 2013) ("[A]lthough recitals in a contract cannot grant rights extending beyond those particularly described in the agreement, they may be useful in construing the rights and obligations created by the agreement.").  For example, Suffolk OTB claims that Delaware North Manager and DNC Gaming violated Section 5.02 of the

---

[14] Contrary to Suffolk OTB's argument, there is no basis to hold DNC Gaming and Delaware North Manager jointly and severally liable because they filed a joint motion to dismiss, there is a single agreement governing the relationship, and they allegedly communicate with Suffolk OTB as a "single unit."  Opp. at ¶ 74.  In <u>NYKCool, A.B.</u>, 507 F. App'x at 87, the Court of Appeals for the Second Circuit advised that such factors could be considered in determining whether the defendants were co-promisors under an *oral contract*.  Here, by contrast, there is a written contract that specifies the distinct obligations taken on by Delaware North Manager and the distinct obligations taken on by DNC Gaming.

AMERICAS 101661622

DMS Agreement by failing to supervise Suffolk OTB employees. <u>See</u> Complaint ¶ 114(e). But the unambiguous language of Section 5.02 only imposes obligations on Delaware North Manager. <u>See</u> DMS Agreement § 5.02 ("From and after the Commencement Date, the ***Manager*** will use its reasonable best efforts to perform its management and supervisory duties with respect to the Business….") (emphasis added). This is true of ***every*** alleged breach in Count II of the Complaint. <u>See</u> Complaint ¶ 114. The fact that Suffolk OTB cannot identify a single breach of contract committed by DNC Gaming is dispositive of its breach of contract claim against DNC Gaming.[15]

**B.     <u>Various Prongs of Suffolk OTB's Claim against Delaware North Manager Fail</u>**

Because the interpretation of a contract is a question of law to be determined by the Court, <u>see</u> <u>First Serv. Fin.</u> v. <u>City Lights at Queens Landing</u>, Inc., 2009 U.S. Dist. LEXIS 27473, at *5 (S.D.N.Y. Mar. 19, 2009), the prongs of Suffolk OTB's breach of contract claim that find no support in the DMS Agreement should be dismissed as a matter of law. <u>See</u> Br. at 25-27.

**1.     <u>Construction Costs</u>**

The DMS Agreement states that "Development Costs," <u>i.e.</u>, the costs of constructing the "Gaming Facility and the Common Areas which serve the Gaming Facility," are an expense of Suffolk OTB. <u>See</u> <u>id.</u> at 25. "Common Areas" are defined to include elevators and escalators, parking areas, and driveways. <u>See</u> <u>id</u> at 25-26<u>.</u> Thus, pursuant to the unambiguous terms of the DMS Agreement, construction costs relating to elevator upgrades and valet parking are allocable to Suffolk OTB.

---

[15] Suffolk OTB's throwaway argument that Defendants' contentions in support of dismissing DNC Gaming from Count II suggest, at best, "ambiguity as to the terms of the DMS Agreement, which cannot be resolved on a motion to dismiss," is meritless. Opp. at ¶ 76. Suffolk OTB has not identified a single section of the DMS Agreement that is ambiguous as to whether it imposes obligations on DNC Gaming, and it cannot create an ambiguity by urging an interpretation that runs counter to the DMS Agreement's express terms.

AMERICAS 101661622

Suffolk OTB concedes that it is responsible for Development Costs concerning the Gaming Facility and Common Areas serving the Gaming Facility, see Opp. ¶ 78, and it does not dispute that elevators, driveways and parking areas are Common Areas. Suffolk OTB nevertheless argues that the elevator and valet construction costs are not its responsibility because these are Common Area costs serving the DNC Retained Business, not the Gaming Facility. See id. ¶¶ 78-79.

This argument is contrary to the express terms of the DMS Agreement, which make clear that the Common Areas are, by definition, a part of the Gaming Facility. See DMS Agreement § 1.01 (defining "Common Areas" as "*all portions of the Gaming Facility* to be utilized by both the Manager in connection with the operation of the Business and by Suffolk OTB in connection with the operation of the Excluded Business….") (emphasis added); id. (defining "Gaming Facility" to include, among other things, *the Common Areas*). Put differently, construction costs for Common Areas, such as elevators and the parking lot, necessarily serve the Gaming Facility. Because the DMS Agreement unambiguously states that these costs should be allocated to Suffolk OTB, the prong of Suffolk OTB's contract claim based on these allegations should be dismissed.

## 2.    Trademarks

Contrary to Suffolk OTB's claim, see Opp. ¶ 80, Defendants have not "admitted to breaches of the DMS Agreement regarding Suffolk OTB's intellectual property" by virtue of their good faith withdrawal of trademark applications submitted to the PTO. Rather, Defendants argued in their Opening Brief that, by Suffolk OTB's own admission, the name "Jake's 58" is not a Mark as defined in the DMS Agreement because it was not determined by Suffolk OTB *and* Delaware North Manager, as required under Section 10.02 of the DMS Agreement.[16] See Br. 26. Suffolk

---

[16] Suffolk OTB argues that it has not alleged "unilateral action" concerning the selection of the name "Jake's 58," see Opp. ¶ 83, but that claim is belied by the plain language of its Complaint. See Complaint ¶ 3 (alleging that it was "Delaware North's … management's decision" to name the facility Jake's 58). Moreover, Suffolk OTB's suggestion that Defendants' unilateral adoption of the name Jake's 58 itself constitutes a breach of Section 10.02 is wrong. See

AMERICAS 101661622

OTB argues that Defendants' reading of Section 10.02 is unreasonable because it requires the Court to read the term "jointly" into Section 10.02, but that is precisely what the conjunction "and" means in this context.  See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.), 2018 Bankr. LEXIS 2324, at *26 (Bankr. S.D.N.Y. Aug. 6, 2018) ("New York courts … interpret 'and' as conjunctive.").  Suffolk OTB's strained argument (which itself relies on reading words into the text of Section 10.02) that Delaware North Manager and Suffolk OTB could *separately* determine trade names that would nevertheless qualify as Marks is inconsistent with the plain language of the DMS Agreement.  See Reiss v. Fin. Performance Corp., 764 N.E.2d 958, 961 (N.Y. 2001) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.").

At any rate, Defendants withdrew all trademark registrations using the name "Jake's 58" when they received Suffolk OTB's notice of default, which raised this issue for the first time *after* Suffolk OTB filed the Complaint.  Suffolk OTB's purported concerns could have been resolved without litigation if it had followed the notice and cure provision of the DMS Agreement, but Suffolk OTB is not interested in good faith resolutions.[17]

### 3.    Failure to Obtain Suffolk OTB's Consent

In the Opening Brief, Defendants showed that Suffolk OTB's claim that Delaware North Manager repeatedly failed to obtain Suffolk OTB's consent, as required by the DMS Agreement,

---

Opp. ¶ 83.  It just means that the name "Jake's 58" does not constitute a Mark, as such term is defined under the DMS Agreement.

[17] Suffolk OTB also argues that Delaware North is still using the Marks because it has refused to assign the domain name for the Jake's 58 website to Suffolk OTB.  Suffolk OTB ignores that Section 10.02 refers to trade names, trademarks and service marks only; it says nothing about domain names.  Defendants asked Suffolk OTB nearly two months ago to provide authority for its position that Defendants must assign any Jake's 58-related domain name under the DMS Agreement.  Suffolk OTB never responded.

was conclusory and need not be credited.  See Br. at 27.  The Opposition highlights three allegations which, if anything, underscore Defendants' point:

- "Delaware North did not obtain approval before instituting a marketing program designed to facilitate Delaware North paying itself for empty hotel rooms, in breach of Section 6.02.6 of the DMS Agreement." See Opp. ¶ 84.  Setting aside Suffolk OTB's mischaracterization of the Free Stay Free Play program, there is no allegation that Delaware North Manager failed to obtain Suffolk OTB's prior approval of, or that Suffolk OTB objected to, the annual Operating Budgets and Annual Marketing Plans for 2018 or 2019, which disclose the Free Stay Free Play program.

- "Delaware North delivered the 2019 Operating Budget past the contractual deadline…." See Opp. ¶ 84.  Discovery will prove this allegation false.  In any event, Suffolk OTB's allegations make clear that this budget was approved by Suffolk OTB and the Gaming Commission.  See Complaint ¶ 95.

- "Suffolk OTB was kept in the dark about [development and construction] costs for months…." See Opp. ¶ 84.  However, Suffolk OTB explicitly alleges that its auditors reviewed the relevant development and construction records.  See Complaint ¶ 41.

## C.    Suffolk OTB's Implied Covenant Claim is Impermissibly Duplicative

There is no real dispute that Suffolk OTB's implied covenant claim arises from the same operative facts as its express contract claim.  Suffolk OTB halfheartedly argues that it has made distinct allegations of misconduct that subvert the purpose of the DMS Agreement, see Opp. ¶ 86, but even a cursory examination of these allegations shows that they are a rehash of Suffolk OTB's express breach of contract allegations: (i) misallocating construction costs, see Complaint ¶ 114(c) (alleging breach of Sections 4.02 and 4.04 due to erroneous cost allocations); (ii) keeping Suffolk OTB in the dark, see id. ¶ 114(j) (alleging breach of Section 7.05 due to failure to provide access to records); (iii) failing to disclose trademark applications, see id. ¶ 114(d) (alleging breach of Section 10.02 concerning trademark applications); (iv) belatedly delivering the annual operating budget, see id. ¶ 114(i) (alleging breach of Section 5.05.1 for alleged late budget delivery); and (v) paying themselves millions of dollars in complimentary hotel stays, see id. ¶ 114(g) (alleging

AMERICAS 101661622

breach of Section 6.02.06 due to failure to implement marketing programs).[18]  Suffolk OTB's

claim that it has made "distinct allegations" fails.[19]

Suffolk OTB next argues that even if its allegations are "entirely duplicative of its breach

of contract allegations"—which they are—its implied covenant claim should not be dismissed

because alternative pleading is permitted.  See Opp. ¶ 88.  This argument likewise fails.

First, Suffolk OTB's implied covenant claim is not pled in the alternative; it is additive.

See Compl. ¶ 115 ("*In addition to the above breaches of the DMS Agreement*, Delaware North

Gaming and Manager breached the covenant of good faith and fair dealing….") (emphasis added).

Second, Suffolk OTB's argument conflicts with longstanding New York law that implied

covenant claims should be dismissed at the pleadings stage where, as here, they are redundant of

express breach claims.  See Br. at 27; see also Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125

(2d Cir. 2013) (holding that New York law "does not recognize a separate cause of action for

breach of the implied covenant of good faith and fair dealing when a breach of contract claim,

based upon the same facts, is also pled"); Amcan Holdings, Inc. v. Canadian Imperial Bank of

Commerce, 894 N.Y.S.2d 47, 49-50 (1st Dep't 2010) ("The claim that defendants breached the

implied covenant of good faith and fair dealing was properly dismissed as duplicative of the

breach-of-contract claim, as both claims arise from the same facts and seek the identical damages

---

[18] Suffolk OTB also claims that Defendants engaged in bad faith conduct by refusing to relinquish the accounts payable function.  See Opp. ¶ 86.  However, the Complaint does not include this allegation as a predicate for its implied covenant claim.  See Complaint ¶ 115.  In any event, the accounts payable function is expressly governed by Section 6.02.2 of the DMS Agreement, which obligates Delaware North Manager to pay all expenses incurred in the operation of the Business.

[19] Suffolk OTB's reliance on Hard Rock Café Int'l v. Hard Rock Hotel Holdings, LLC, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) (cited in Opp. ¶87) is misplaced.  In Hard Rock, the court determined that an implied covenant counterclaim was not duplicative of an express contract counterclaim where the defendant alleged misconduct not expressly covered by the parties' agreement, which in turn suggested that the plaintiff had "subvert[ed] the contract's purpose without violating its express terms."  Id. at 567-68.  Here, every allegation of misconduct is covered by the express provisions of the DMS Agreement.

for each alleged breach.").  Moreover, this is not a case, like those cited by Suffolk OTB,[20] where there is a dispute about the existence, enforceability, or scope of the DMS Agreement.[21]  Suffolk OTB's implied covenant claim alleges breaches covered by the express terms of the DMS Agreement and accordingly warrants dismissal.  See Br. 27.

## III.    SUFFOLK OTB'S CLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED

### A.    Suffolk OTB has Not Shown a Fiduciary Relationship

Suffolk OTB argues that it has pleaded a "quintessential fiduciary relationship" based on the following allegations: it sought out an experienced third party to manage and operate its VLT Facility, it chose "Delaware North" on the basis of its specialized expertise, and it placed Delaware North Manager in a position of trust and confidence to act on its behalf in managing the daily operations of the VLT Facility.  See Opp. ¶¶ 90-92.[22]  Without more, however, these allegations do not plead a fiduciary duty, especially in light of the parties' arm's length business relationship. See Br. at 29; see also Atlantis Info. Tech. v. CA, Inc., 485 F. Supp. 2d 224, 231-32 (E.D.N.Y. 2007) ("[A]lthough the Plaintiff alleges that CA has superior knowledge regarding its licensing activities and that it entrusted CA with its products for distribution, the parties have no more than

---

[20] See Fantozzi v. Axsys Techs., Inc., 2008 U.S. Dist. LEXIS 94040, at *21-22 (S.D.N.Y. Nov. 6, 2008) (cited in Opp. ¶ 88) (finding that implied covenant claim was not barred as duplicative in light of "dispute over the existence, scope, or enforceability of the putative contract"); E*Trade Fin. Corp. v. Deutsche Bank AG, 2008 U.S. Dist. LEXIS 46451, at *26 (S.D.N.Y. June 13, 2008) (cited in Opp. ¶ 88) (holding that it was too soon to address whether the implied covenant claim was duplicative where "the meaning of the parties' contract has yet to be determined").

[21] Indeed, the parties agree that the DMS Agreement is an enforceable contract and there is no material dispute about its scope.  The only viable dispute concerns the veracity of Suffolk OTB's factual allegations underpinning its breach of contract claim.

[22] Suffolk OTB also claims that it gave Delaware North Manager control over its accounts payable function, Opp, ¶ 91, but it omits that the DMS Agreement explicitly dictates the manner in which the funds generated by the operation of Jake's 58 are to be distributed by Delaware North Manager.  See DMS Agreement Art. VII.

AMERICAS 101661622

a conventional business relationship…. Both parties are commercial companies and although the Plaintiff contends that it had trust and confidence in the Defendant, that is not extraordinary.").

Contrary to Suffolk OTB's claim, see Opp. ¶ 94, Defendants did not suggest that the DMS Agreement precludes a fiduciary relationship. Defendants merely noted that the sections of the DMS Agreement highlighted by Suffolk OTB, see Complaint ¶¶ 30-31, do not create a fiduciary relationship. This is because under New York law, courts focus on the realities of the parties' relationship, not the words used to describe it. See Br. 30. And where, as here, the parties entered into an arm's length agreement, "no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." Galvstar Holdings, LLC v. Harvard Steel Sales, LLC, 722 F. Appx. 12, 15 (2d Cir. 2018).

Suffolk OTB has not pleaded any extraordinary circumstances. The Complaint alleges that Delaware North Manager provided standard management services, such as supervising casino staff, allocating casino expenses, and implementing marketing campaigns. See Br. at 30-31. The Opposition further underscores Delaware North Manager's lack of discretion and dominance in managing Jake's 58. See Opp. ¶ 84 (observing that, under the DMS Agreement, Delaware North Manager cannot finalize budgets without Suffolk OTB's prior approval and agreement). Suffolk OTB strains to engraft heightened duties onto the parties' dealings, using fiduciary buzzwords at every turn, but there is nothing extraordinary about Delaware North Manager carrying out its straightforward obligations under the DMS Agreement. See Osan Ltd. v. Accenture LLP, 454 F. Supp. 2d 46, 57 (E.D.N.Y. 2006) ("[A] conventional business relationship, without more, does not become a fiduciary relationship by mere allegation.").

B.    **The Breach of Fiduciary Duty Claim is Impermissibly Duplicative**

Even if Suffolk OTB has adequately pleaded the existence of a fiduciary duty, its fiduciary duty claim nevertheless requires dismissal because it is impermissibly duplicative of its contract claim.  See Br. at 31-33; N. Shipping Funds I, LLC v. Icon Capital Corp., 921 F.Supp.2d 94, 103-06 (S.D.N.Y. 2013) ("Since the fiduciary duty claim is duplicative of the breach of contract claim, even if the plaintiff had sufficiently alleged a fiduciary relationship, this claim must be dismissed.").

This is not a case, as Suffolk OTB disingenuously suggests, where there is ***some*** overlap between its breach of contract and breach of fiduciary duty claims.  See Opp. ¶¶ 98-100.  Instead, the allegations underpinning both claims are virtually identical.  See Br. at 32-33.  As such, the fiduciary duty claim can only survive if it is based on the breach of a legal duty that is independent of the DMS Agreement and the Lease Agreement.  See id.  Suffolk OTB latches onto this point, arguing that it has established "a fiduciary duty arising independently from the contract, having its roots in the RFP process that ***predates the DMS Agreement by years***."  Opp. ¶ 99.  This is a gross misrepresentation.  Suffolk OTB alleges that it "accept[ed] Delaware North's bid" to manage its VLT Facility in 2014.  See Opp. ¶ 90.  The parties negotiated and signed the Original DMS Agreement immediately thereafter.  See Dkt. No. 225, In re Suffolk Reg'l Off-Track Betting Corp., Case No. 12-43503-CEC (E.D.N.Y. Mar. 11, 2014)  (motion seeking entry of an order approving the Original DMS Agreement, dated March 11, 2014).  Thus, there was no fiduciary relationship predating the parties' written agreement by years, nor was one formed through a generic RFP process designed to select Suffolk OTB's counterparty to the Original DMS Agreement.  Rather, the parties' entire relationship is governed by the Original DMS Agreement, as amended.

29

Suffolk OTB's cited authorities are inapposite.  For example, in <u>Winthrop-Univ. Hosp.</u> <u>Ass'n</u> v. <u>Sterling Servs. Grp., L.C.</u>, 2009 U.S. Dist. LEXIS 142426, at *16-17 (E.D.N.Y. Mar. 31, 2009) (cited in Opp. ¶ 100), the court allowed the plaintiff's fiduciary duty claim to proceed due to allegations that plaintiff granted defendant authority that "extended beyond the four corners of the Agreements."  In <u>Bullmore</u> v. <u>Banc of Am. Sec. LLC</u>, 485 F. Supp. 2d 464, 471 (S.D.N.Y. 2007) (cited in Opp. ¶ 100), the court found that an investment advisor with "broad discretion" to manage its client's investments had a duty collateral to the parties' agreement.  Here, there are no allegations (aside from Suffolk OTB's made-up, extra-contractual relationship) that Defendants were given any authority or discretion outside the four corners of the DMS Agreement or the Lease Agreement.  Indeed, the same allegations of fiduciary wrongdoing are explicitly raised in Suffolk OTB's breach of contract claim, <u>see</u> Br. 32, and Suffolk OTB's efforts to distinguish them by using conclusory labels like "bad faith" is unavailing.  <u>See</u> <u>Barbara</u> v. <u>MarineMax, Inc.</u>, 2012 U.S. Dist. LEXIS 171975, at *24 (E.D.N.Y. Dec. 4, 2012) ("If the breach of fiduciary duty claim indeed arises from the duties imposed by the [contract], the claim is duplicative of the breach of contract claim, and is therefore subject to dismissal.").[23]

### C.    The Economic Loss Doctrine Bars Suffolk OTB's Claim

Suffolk OTB does not dispute that any purported damages it suffered due to Defendants' alleged breach of fiduciary duty are the exact same as what it seeks under its breach of contract claim.  Instead, it argues that the economic loss doctrine, which presents a second barrier to extra-

---

[23] Suffolk OTB again deploys the fallback argument that, at the pleading stage, its duplicative fiduciary duty claim should not be dismissed because it is entitled to plead in the alternative.  <u>See</u> Opp. ¶ 101.  However, as with its breach of the implied covenant claim, Suffolk OTB did not plead this claim in the alternative.  Moreover, as discussed <u>supra</u> at 27, this is not a situation where the existence or enforceability of the DMS Agreement or Lease Agreement is in dispute.  <u>See</u> <u>Uni-World Capital, L.P.</u> v. <u>Preferred Fragrance, Inc.</u>, 43 F. Supp. 3d 236, 244 (S.D.N.Y. 2014) ("Where a fiduciary duty us based upon a ***comprehensive written contract*** written contracts between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract and must be dismissed) (emphasis added).  If, as Suffolk OTB proclaims, duplicative claims could always be pleaded in the alternative, New York would not have such a robust body of case law dismissing these claims at the motion to dismiss phase.

AMERICAS 101661622

contractual claims arising out of contractual relationships, applies only in the residential-mortgage backed securities ("RMBS") context and, as a result, has no application here.  See Opp. ¶ 102. Suffolk OTB is wrong.

Contrary to Suffolk OTB's claim, the economic loss doctrine is well-grounded in New York law.  New York courts regularly invoke this doctrine to dismiss tort claims, including breach of fiduciary duty claims, in a variety of contexts where a party sues in tort to recover a purely economic loss arising under a contract.  See, e.g., Nebraskaland, Inc. v. Sunoco, Inc., 2011 U.S. Dist. LEXIS 142127, at *17-23 (E.D.N.Y. July 13 2011) (invoking economic loss doctrine to bar negligent misrepresentation claim seeking damages in a lawsuit concerning inflated fuel invoices); Holborn Corp. v. Sawgrass Mut. Ins. Co., 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) (barring breach of fiduciary duty and negligence claims under the economic loss doctrine in connection with insurance dispute).  The fact that certain cases applying the economic loss doctrine have recently arisen in the RMBS context is irrelevant:  "As the Second Circuit has definitively held, New York law does not recognize a tort cause of action when only economic loss is sought."  Long Island Lighting Co. v. Stone & Webster Eng'g Corp., 839 F. Supp. 183, 187 (E.D.N.Y. 1993); see also  Triaxx Prime CDO 2006-1, Ltd. v. Bank of N.Y. Mellon, 2018 U.S. Dist. LEXIS 42865, at *19-20 (S.D.N.Y. Mar. 8, 2018), aff'd sub nom. Triaxx Prime CDO 2006-1, Ltd. v. U.S. Bank Nat'l Ass'n, 741 F. App'x 857 (2d Cir. 2018) (dismissing tort claims as barred by the economic loss doctrine).

Thus, even if Suffolk OTB has adequately alleged a fiduciary relationship and a legal duty separate and distinct from its contract claim—and, as discussed in Sections III.A and III.B, supra, it plainly has not—its breach of fiduciary duty claim is also barred by the economic loss doctrine.[24]

---

[24] Suffolk OTB also focuses on the economic loss rule, see Opp. ¶¶ 103-105, which is a related, albeit legally distinct bar to recovery that Defendants did not raise as a basis for dismissal in the Opening Brief.  The cases cited by Suffolk

## IV.     <u>SUFFOLK OTB'S CLAIM FOR AIDING AND ABETTING FAILS</u>

Because Suffolk OTB has failed to allege a viable breach of fiduciary duty claim, its claim for aiding and abetting fiduciary duty likewise fails. <u>See</u> <u>Kolbeck</u> v. <u>LIT Am., Inc.</u>, 939 F. Supp. 240, 245 (S.D.N.Y. 1996) (existence of underlying breach is critical to claim of aiding and abetting because analysis of secondary liability is based on the contours of the primary violation).

Moreover, even if the Court were to determine that Suffolk OTB's breach of fiduciary duty claim is viable, Suffolk OTB has failed to adequately allege substantial assistance or knowing inducement by DNC, DNC Gaming, and Delaware North Properties. <u>See</u> Br. at 34-35. In its Opposition, Suffolk OTB merely recites the same allegations set forth in paragraph 132 of its Complaint, such as (i) forming Delaware North Manager, (ii) acting as Delaware North Manager's guarantor, (iii) "purchasing the Islandia Property … which was the instrumentality through which Suffolk OTB was falsely charged for rent and utilities," and (iv) refusing to return allegedly falsely debited monies. <u>See</u> Opp. ¶ 107. Suffolk OTB declares that these allegations are "more than enough to survive dismissal," <u>id.</u>, but case law holds that the incorporation of subsidiaries and the exercise of purported financial leverage do ***not*** constitute substantial assistance. <u>See</u> <u>Marino</u> v. <u>Grupo Mundial Tenedora, S.A.</u>, 810 F. Supp. 2d 601, 614 (S.D.N.Y. 2011). Nor is it sufficient to repeat the allegations underlying the purported primary violation, such as dispute cost allocations and rent payments, and parrot the phrases "substantial assistance" and "knowing inducement" without any further fact allegations as support. <u>See</u> <u>King Cnty.</u> v. <u>IKB Deutsche Industriebank</u>

---

OTB that decline to apply the economic loss rule to bar tort claims, including for professional malpractice (which Suffolk OTB does not allege in this case), have no application here. Moreover, the professional malpractice cases cited by Suffolk OTB in paragraph 105 of the Opposition, such as <u>17 Vista Fee Assocs.</u> v. <u>Teachers Ins. & Annuity Ass'n. of Am.</u>, 693 N.Y.S.3d 554 (1st Dep't 1999), and <u>Commerce & Indus. Ins. Co.</u> v. <u>Vulcraft, Inc.</u>, 1998 U.S. Dist. LEXIS 18393 (S.D.N.Y. Nov. 20, 1998), were premised on the existence of professional duties collateral to the parties' contracts. As discussed, in section III B., <u>supra</u>, Defendants do not have any obligations separate and distinct from those imposed by the DMS Agreement and the Lease Agreement.

AG, 863 F. Supp. 2d 288, 300-301 (S.D.N.Y. 2012) ("For claims of aiding and abetting to survive a motion to dismiss, they must be pled with some level of specificity and may not consist solely of a broad, conclusory repetition of the elements of aiding and abetting.").[25]

## V.    SUFFOLK OTB'S CLAIM FOR UNJUST ENRICHMENT FAILS

Suffolk OTB concedes that its unjust enrichment claim cannot lie where the subject matter of its claim is governed by a written contract. See Opp. ¶ 109. In an attempt to sidestep this bar, Suffolk OTB argues that there are disputes as to the enforceability and scope of the DMS Agreement and the Lease Agreement. See id. ¶¶ 109-11. These arguments are unpersuasive.

Suffolk OTB has pleaded that these agreements are valid and enforceable contracts, see Complaint ¶¶ 114, 120, and Defendants do not contest this point. As such, there is no dispute that the DMS Agreement and the Lease Agreement are enforceable. Suffolk OTB argues that there is a dispute as to whether the DMS Agreement is enforceable as to DNC Gaming, see Opp. ¶ 110, but this is a mischaracterization of Defendants' argument. Defendants have never disputed that DNC Gaming is a party to the DMS Agreement; rather, Defendants argued that the DMS Agreement unambiguously imposes different obligations on Delaware North Manager and DNC Gaming, such that DNC Gaming cannot be liable for Delaware North Manager's alleged breaches. See supra at Section II. A. As such, the case law cited by Suffolk OTB, in which unjust enrichment claims were allowed to proceed where a party disputed either being a party to a contract or bound by its terms, see Opp. ¶ 110, are inapplicable.

---

[25] Suffolk OTB's reliance on Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 652 F. Supp. 2d 495 (S.D.N.Y. 2009) (cited in Opp. ¶ 107), is unavailing. There, the plaintiff alleged that the defendant-bank generated account statements incorporating numbers received from a hedge fund that it knew were false, and that it made statements to the plaintiff's accountants concealing the hedge fund's fraud. Id. at 511. The Court held that this alleged conduct substantially contributed to the underlying misconduct and allowed the aiding and abetting claim to proceed. Id. Here, by contrast, there are no allegations that any of the Defendants took action to facilitate or conceal any underlying breaches.

AMERICAS 101661622

Suffolk OTB also argues that there is a dispute as to whether the DMS Agreement is binding on DNC and DNC Gaming under its legally infirm theory of alter ego liability. See id. If the Court dismisses Suffolk OTB's veil piercing claim, which, as discussed in Section VI, infra, it should, there is still no basis for its unjust enrichment claim to proceed as to DNC or DNC Gaming. As shown in the Opening Brief, the Complaint does not allege any specific actions taken by DNC or DNC Gaming to unjustly enrich themselves at the expense of Suffolk OTB. See Br. at 35-36. Suffolk OTB merely alleges, in conclusory fashion, that "Delaware North acted in bad faith . . ." and "Delaware North…has been unjustly enriched at the expense of Suffolk OTB." See Complaint ¶¶ 137-38. It is axiomatic that "generalized conclusory unjust enrichment allegations lumping all 'Defendants' together fail to establish claims of unjust enrichment." Lopez v. Bonanza.com, Inc., 2019 U.S. Dist. LEXIS 170715, at *41 (S.D.N.Y. Sept. 30, 2019); see also Bytemark, Inc.v. Xerox Corp., 342 F. Supp. 3d 496, 513 & n.3 (S.D.N.Y. 2018) (dismissing unjust enrichment claims where Plaintiff "lump[ed] all of the Defendants together and impute[d] the acts of [one defendant to another]"). Other than sweeping and non-specific allegations of bad faith schemes, Suffolk OTB has only alleged conduct, such as the misallocation of costs, that is squarely covered by the relevant agreements. In this context, an unjust enrichment claim cannot lie. See Mgr. Meats, Inc. v. Schweid, 2012 U.S. Dist. LEXIS 181481, at *20 (E.D.N.Y. Dec. 21, 2012) ("[W]hen a valid contract exists that covers the subject of the dispute, even if the defendant was not a party to the contract, a plaintiff is precluded from bringing a claim for unjust enrichment, because the focus of the inquiry is not on the parties to the contract but the subject of the contract.").

Unsurprisingly, Suffolk OTB next argues that there are disputes over the scope of the DMS Agreement because Defendants' arguments "beg the question of what performance" is required of them. See Opp. ¶ 111. Suffolk OTB again mischaracterizes Defendants' position. Defendants

34

have never argued that the DMS or Lease Agreement is ambiguous as to Delaware North Manager's, DNC Gaming's, or Delaware North Properties' obligations.  Instead, Defendants have simply argued that discovery will show that no Defendant breached these agreements.  See Br. at 25-27.   Where, as here, the allegations pleaded in support of an unjust enrichment claim are identical to those pleaded in support of a breach of contract claim, compare Complaint ¶ 137 with Complaint ¶¶ 114, 120, and there is no dispute as to the enforceability of the agreement, the unjust enrichment claim should be dismissed at the outset of the case.  See King's Choice Neckwear, Inc. v. Pitney Bowes, Inc., 2009 U.S. Dist. LEXIS 119934, at *21 (S.D.N.Y. Dec. 23, 2009) ("Unjust enrichment may be plead in the alternative where the plaintiff challenges the validity of the contract; it may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract.").

## VI.    SUFFOLK OTB'S CLAIM FOR PIERCING THE CORPORATE VEIL FAILS

In the Opening Brief, Defendants showed that Suffolk OTB has no basis to pierce the corporate veil as to DNC, which is not a party to the DMS Agreement or the Lease Agreement, or DNC Gaming, which did not breach any of the section of the DMS Agreement at issue in this case.  Suffolk OTB counters that "the Complaint demonstrates that DNC and DNC Gaming are indeed proper defendants," Opp. ¶ 13, but this claim is readily disproven by Suffolk OTB's tortured effort to shoehorn its fact allegations into the Passalacqua framework and inability to show disregard of the corporate form used to commit injustice.[26]

---

[26] As shown in the Opening Brief, Delaware North Manager is incorporated in New York; DNC Gaming and Delaware North Properties are incorporated in Delaware.  New York and Delaware veil piercing law do not materially differ.  See Cohen v. Schroeder, 248 F. Supp. 3d 511, 518 n.4 (S.D.N.Y. 2017).

AMERICAS 101661622

### A.   Suffolk OTB's Veil Piercing Allegations Are Not Immune from Dismissal

As a threshold matter, Suffolk OTB argues that because veil piercing is a "fact-intensive exercise," its claim cannot be resolved on a motion to dismiss.  Opp. ¶ 114.  But, as Suffolk OTB later acknowledges, see id ¶ 115, New York courts routinely dismiss veil piercing claims that are not well pled.  Key Items v. Ultima Diamonds, Inc., 2010 U.S. Dist. LEXIS 84830, at *29 (S.D.N.Y. Aug. 17, 2010) (cited in Opp. ¶ 115) ("[C]ourts routinely dismiss alter ego claims pursuant to Fed. R. Civ. P. 12(b)(6)."); White v. Nat'l Home Prot., Inc., 2010 U.S. Dist. LEXIS 40414, at *13 (S.D.N.Y. Apr. 21, 2010); Two Kids from Queens, Inc. v. J&S Kidswear, Inc., 2010 U.S. Dist. LEXIS 10620, at *10 (E.D.N.Y. Feb. 8, 2010).  New York courts are reluctant to disregard the corporate form, and a party seeking such relief "bears a heavy burden." White, 2010 U.S. Dist. LEXIS 40414, at *13-14.  Suffolk OTB has not met its burden here, irrespective of whether veil piercing is considered a procedural device or a standalone cause of action.[27]

### B.   Suffolk OTB Has Failed to Allege Complete Domination

Both parties agree that in considering whether the "complete domination" prong of the veil piercing inquiry is met, New York courts assess the factors set forth in Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991).  See Br. at 38; Opp. ¶ 117.  Suffolk OTB proclaims that there is no "prescribed formula" as to how many factors must be met, id., but New York courts have held that, as a matter of law, "[t]hose seeking to pierce a corporate

---

[27] The case law cited by Suffolk OTB in support of its argument that its veil piercing allegations should survive the pleadings stage is inapposite.  In Robles v. Copstat Sec., Inc., 2009 U.S. Dist. LEXIS 112003, at *13 (S.D.N.Y. Dec. 2, 2009) (cited in Opp. ¶ 114), the Court's decision to allow the claim to proceed hinged on plausible allegations that defendant had taken all of the dominated corporation's assets and kept it "severely undercapitalized."  Similarly, in Blair v. Infineon Techs. AG, 720 F. Supp. 2d 462, 472-73 (D. Del. 2010) (cited in Opp. ¶ 114), the plaintiffs alleged "gross undercapitalization; failure to observe corporate formalities; insolvency; and siphoning."  Here, by contrast, there are no such allegations.

AMERICAS 101661622

veil of course bear a heavy burden of showing that the corporation was dominated as to the transaction attacked." TNS Holdings Inc. v. MKI Sec. Corp., 703 N.E.2d 749, 751 (N.Y. 1998).

Suffolk OTB's case law confirms this point. Suffolk OTB misleadingly suggests that in Cookware Co. (USA), LLC v. Austin, 2017 U.S. Dist. LEXIS 178623, at *8-9 (S.D.N.Y. Oct. 26, 2017) (cited in Opp. ¶ 117), the court permitted a veil piercing claim to proceed to discovery in light of allegations that the defendants used the same contact information, guaranteed each other's obligations, and used each other's property. Suffolk OTB omits that the plaintiff in Cookware also alleged that one defendant was the sole officer and employee of the other, the defendants did not keep corporate records or observe corporate formalities, and the defendants commingled assets. Id. Similarly, in Int'l Council of Shopping Centers. v. Info Quarter, LLC, 2018 U.S. Dist. LEXIS 152974, at *12-13 (S.D.N.Y. Sept. 7, 2018) (cited in Opp. ¶ 117), the plaintiff alleged that the defendant (i) was the proprietor and sole member of the LLC, (ii) operated the LLC by funneling funds through personal and corporate bank accounts, (iii) used corporate funds and property for personal purposes, (iv) failed to sufficiently capitalize the entity in order to avoid judgments, (v) failed to observe organizational formalities, (vi) shared common office space and phone numbers, and (vii) used the LLC to accept payments for an unrelated offshore business.

Here, by contrast, Suffolk OTB has merely alleged overlap in ownership and personnel and common office space and addresses. See Br. at 38-39. Suffolk OTB protests that its allegations actually "go to numerous of the Passalacqua factors," Opp. ¶ 118, but this claim is meritless:

- First, Suffolk OTB highlights its allegation that DNC and DNC Gaming created Delaware North Manager and Delaware North Properties as vehicles through which to provide management services and "reap profits," which it claims goes to factors 1 and

AMERICAS 101661622

7.  But the creation of a wholly-owned subsidiary hardly suggests the absence of corporate formalities (factor 1) or the lack of arm's length dealings (factor 7).[28]

- <u>Second</u>, Suffolk OTB notes it allegation that DNC and DNC Gaming management regularly speak for Delaware North Manager and Delaware North Properties, which it claims goes to factor 9.  But the payment or guarantee of debts (factor 9) is entirely unrelated to this allegation.

- <u>Third</u>, Suffolk OTB claims that factor 10 is implicated by its allegation that Delaware North Properties was created solely to purchase an alternative location for the VLT Facility so that Suffolk OTB would be forced to be its tenant.  But factor 10 focuses on whether the dominating corporation used property owned by the dominated corporation as if it were its own, which is not at issue here.  Suffolk OTB's complaint is that it is a tenant, not that it is a tenant of one or another Delaware North entity.

- <u>Fourth</u>, Suffolk OTB claims that its allegation that the Delaware North entities directed Delaware North Manager to "abuse access to Suffolk OTB's accounts to claim purposefully misallocated funds" goes to factors 6 and 10.  Initially, this allegation was not pleaded in Suffolk OTB's Complaint and, as a result, cannot be credited here.[29]  Moreover, this wholly conclusory allegation is entirely unrelated to factor 10 and, at best, marginally related to factor 6 (the amount of business discretion displayed by the allegedly dominated corporation).

In sum, Suffolk OTB's allegations in this case—which are entirely conclusory—are plainly insufficient to show complete domination, as required under the first prong of the veil piercing test.  <u>See</u> Br. at 38-40; <u>White</u>, 2010 U.S. Dist. LEXIS 40414, at *13-14 (granting 12(b)(6) motion and dismissing veil piercing claim where, as here, there were no well-pled allegations of intermingled funds, failure to deal at arm's length, or abuse of the corporate form in any meaningful way); <u>Roldan</u> v. <u>Second Dev. Servs.</u>, 2017 U.S. Dist. LEXIS 29135, at *20 (E.D.N.Y. Feb. 28, 2017) ("Courts in this Circuit have held that pleading facts that corporate entities shared common offices, principals and owners was not, without more, enough to pierce the corporate veil

---

[28] <u>See</u> <u>Thomson-CSF, S.A.</u> v. <u>Am. Arbitration Ass'n</u>, 64 F.3d 773, 778 (2d Cir. 1995) (declining to pierce the corporate veil because even where the parent "incorporated [the subsidiary] into its own organizational and decision-making structure," the plaintiff still "ha[d] not shown an absence of corporate formalities").

[29] <u>See</u> <u>Two Kids from Queens, Inc.</u>, 2010 U.S. Dist. LEXIS 10620, at *10 (dismissing veil piercing claim where plaintiffs, "in opposition to the motion, point out certain 'facts' … not contained in the Complaint").

AMERICAS 101661622

. . . .") (collecting cases); Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC), 420 B.R. 112, 138 (Bankr. S.D.N.Y. 2009) ("It is well-established that wholly-owned subsidiaries may share officers, directors, and employees with their parent, without requiring the court to infer that the subsidiary is a mere instrumentality for the parent.").[30]

### C.    Suffolk OTB Has Failed to Plead Fraud and Injustice

Even if Suffolk OTB had sufficiently alleged complete domination, it would also need to allege "that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." White, 2010 U.S. Dist. LEXIS 40414, at *14; see Morris v. State Dep't of Taxation & Fin., 623 N.E.2d 1157, 1161 (N.Y. 1993) (holding that "domination, standing alone, is not enough" to disregard the corporate form).

Suffolk OTB argues that it "easily satisfied this prong" through its conclusory allegation that DNC and DNC Gaming created Delaware North Manager and Delaware North Properties to enrich themselves at Suffolk OTB's expense.  Opp. ¶ 121.  This argument misapprehends the relevant inquiry.  A plaintiff cannot plead a veil piercing claim simply by alleging that a subsidiary was formed and that an injustice—which is the same injustice that is the predicate for its other claims—subsequently occurred.  See NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 183 (2d Cir. 2008) ("[T]he claimed injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit.") (applying Delaware law).  Rather,

---

[30] Suffolk OTB's cases, Opp. ¶ 120, are in accord. See Int'l Council of Shopping Ctrs., Inc, 2018 U.S. Dist. LEXIS 152974, at *12-14 (denying motion to dismiss where complaint alleged intermingling of funds, inadequate capitalization, disregard of corporate formalities, and shared common office space and phone numbers); Moses v. Martin, 360 F. Supp. 2d 533, 540–41 (S.D.N.Y. 2004) (allegations of a lack of corporate formalities, commingling of funds, and self-dealing survive motion to dismiss); Union Carbide Corp. v. Montell, N.V., 944 F. Supp. 1119, 1145 (S.D.N.Y. 1996) (denying motion to dismiss where there were "numerous" specific allegations that parent repeatedly directed subsidiary to act against the subsidiary's own interests).  Here, by contrast, there are no allegations of inadequate capitalization, intermingling of assets, or disregard of corporate formalities, i.e., the hallmarks of a veil piercing action.

Suffolk OTB needs to allege an element of injustice or fraud **distinct** from the underlying wrong giving rise to its other claims, which was effectuated by misuse of the corporate form.  See Cohen v. Schroeder, 248 F. Supp. 3d 511, 524 (S.D.N.Y. 2017) ("[T]o prevail on prong two of the alter-ego analysis, a party must show that defendant's abuse of the corporate form in and of itself operates to serve some fraud or injustice, *distinct from the alleged wrongs of the underlying corporation*.") (emphasis in original) (applying Delaware law); Singh v. NYCTL 2009-A Trust, 2016 U.S. Dist. LEXIS 94738, at *39 (S.D.N.Y. July 20, 2016) ("In the absence of any concrete allegation that *Plaintiff was harmed by misuse of the corporate form*, the veil-piercing allegations are dismissed.") (emphasis added).

Recognizing that its allegations of injustice are simply repackaged versions of its other claims, see Complaint ¶ 143, Suffolk OTB argues, without support, that its "broader allegations" of DNC and DNC Gaming orchestrating a bad faith, self-enriching scheme to avoid liability is sufficient to pierce the corporate veil.  Opp. ¶ 122.  Suffolk OTB plainly cannot invent a distinct injustice by applying the label "scheme" or "bad faith" to the same underlying conduct, nor can it plausibly argue that Defendants are seeking to avoid liability when Suffolk OTB has not included a single allegation of siphoning funds or secreting assets.[31]  Suffolk OTB's facially deficient veil piercing claim should be dismissed.  See In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 419 (S.D.N.Y. 2011) (dismissing veil piercing allegations due to the "complete absence of any basis to infer the use of the subsidiary entities as a means to perpetrate a fraud").

---

[31] For example, in United States v. Dynamic Visions, Inc., 220 F. Supp. 3d 16, 26 (D.D.C. 2016) (cited in Opp. ¶ 121), the Court pierced the corporate veil upon plaintiff's showing that a health care provider's sole owner and president withdrew large sums of money from the company's bank accounts and hid them in accounts he controlled personally. Here, by contrast, Suffolk OTB does not allege that DNC or DNC Gaming stripped assets from Delaware North Manager or that Delaware North Manager is otherwise judgment proof.

## VII.    SUFFOLK OTB'S CLAIM FOR DECLARATORY RELIEF FAILS

Defendants showed in their Opening Brief that, as a matter of law, Suffolk OTB is not entitled to terminate the DMS Agreement because it did not adhere to the unambiguous notice and cure provisions set forth in the DMS Agreement before filing its Complaint.[32]  See Br. at 42. Suffolk OTB concedes that it provided its notice of default *after* it filed its Complaint, but argues that the DMS Agreement does not preclude it from filing a lawsuit seeking termination before providing the contractually required notice period and opportunity to cure.  See Opp. ¶ 124.  But New York law is clear that an "attempt to terminate a contract that fails to follow the contractually-mandated termination procedure is ineffective."  Signature Apparel Grp. LLC v. Laurita (In re Signature Apparel Group LLC), 2015 Bankr. LEXIS 671, at *36 (Bankr. S.D.N.Y. Mar. 4, 2015). Indeed, the entire point of a notice and cure period is to afford the parties an opportunity to avoid litigation.  See U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc., 45 N.Y.S.3d 11, 17 (1st Dep't 2016). Suffolk OTB did not timely provide written notice and an opportunity to cure, in accordance with the DMS Agreement's notice provisions, and its claim seeking a declaration that an Event of Default has occurred should accordingly be dismissed.  See Br. at 42 (citing Bausch & Lomb v. Bressler, 977 F.2d 720, 727 (2d Cir. 1992) (holding that where an agreement "specifies conditions precedent to the right of cancellation, the conditions must be complied with")).

Suffolk OTB next argues that its failure to adhere to the DMS Agreement's notice provisions should be excused because it has alleged sufficient evidence of fraud going to "the root of the matter or essence" of the DMS Agreement.  Opp. ¶ 125 (quoting Southland Corp. v. Mir, 748 F. Supp. 969, 983 (E.D.N.Y. 1990)).  This argument is unpersuasive.  As noted above, supra

---

[32] Contrary to Suffolk OTB's claim, see Opp. ¶ 123, Defendants vigorously dispute that Suffolk OTB has adequately alleged a basis to terminate the DMS Agreement.  However, Suffolk OTB's allegations raise issues of fact that are not ripe for dismissal in connection with a Rule 12(b)(6) motion.

AMERICAS 101661622

at Section I, this case presents, at most, a routine contractual dispute concerning the allocation of costs, and Suffolk OTB cannot avoid its unambiguous contractual obligations by contriving false claims.   Moreover, even if Suffolk OTB had adequately alleged a claim sounding in fraud, Defendants have not frustrated the "essence" of the DMS Agreement, *i.e.*, the successful and economic administration and management of Jake's 58.   The exact opposite is true—by Suffolk OTB's own admission, Jake's 58 is flourishing under Delaware North Manager' management.   <u>See</u> Br. at 2 (recounting Suffolk OTB's statements to the Court that Jake's 58 is "***thriving***").

Suffolk OTB attempts to analogize this situation to <u>7-Eleven, Inc.</u> v. <u>Khan</u>, 977 F. Supp. 2d 214, 230 (E.D.N.Y. 2013), where the Court excused the plaintiff's non-compliance with notice and cure provisions in a franchisor/franchisee agreement.   <u>See</u> Opp. ¶ 126.   Unlike here, however, the plaintiff in <u>7-Eleven</u> submitted substantial ***evidence*** of fraud consisting of video footage showing "rampant misreporting of sales," witness testimony outlining the fraud, and reports evidencing "discrepancies between reported sales and inventory purchased."   <u>7-Eleven</u>, 977 F. Supp. 2d at 224-35.   Similarly, in <u>Southland Corp.</u> v. <u>Mir</u>, 748 F. Supp. 969, 976-77 (E.D.N.Y. 1990) (Opp. ¶ 126), the court excused contractually required notice where the plaintiff presented ***evidence*** of fraud consisting of "outright admissions by … franchisees that they altered records." <u>See</u> <u>also</u> <u>Giuffre</u> v. <u>Hyundai Motor Am.</u>, 756 F.3d 204, 211 (2d Cir. 2014) (Opp. ¶ 126) (finding sufficient ***evidence*** of fraud where "[t]here was…not merely 'evidence' of fraudulent conduct on the part of [the Plaintiff]—it was an adjudicated fact.").   Suffolk OTB's trumped up allegations of fraud, which it proclaims are not curable,[33] <u>see</u> Opp. ¶ 127, pale in comparison to the evidence of fraud adduced in the cases it cites where contractually required notice was excused.   As such, there

---

[33] To the contrary, as outlined in the Opening Brief, <u>see</u> Br. at 26-27, Delaware North Manager has already remedied certain of the alleged "breaches" that Suffolk OTB raised for the first time in its Complaint.

is no colorable basis to excuse Suffolk OTB's failure to comply with the notice and cure provisions in the DMS Agreement, especially in light of the fact that Jake's 58 is indisputably thriving.

## VIII.    SUFFOLK OTB'S REQUEST FOR AN ACCOUNTING FAILS

Suffolk OTB wrongly claims that Defendants acknowledge that it has pled the elements to establish a claim of equitable accounting.  See Opp. ¶ 128.  As discussed in Section III, supra, Suffolk OTB has not adequately alleged a breach of fiduciary duty.[34]  For this reason alone, Suffolk OTB's request for an accounting fails.[35]  See Opp. ¶¶ 128-130 (recognizing that if the court dismisses its breach of fiduciary duty claim, its request for an accounting fails too).

Defendants also showed in the Opening Brief that Suffolk OTB's request for an accounting should be dismissed because the remedy it seeks, i.e., access to records concerning the VLT Facility, will be provided in discovery in connection with its breach of contact claim.  See Br. at 43 (citing Associated Mortg. Bankers Inc. v. Calcon Mut. Mortg. LLC, 159 F. Supp. 3d 324, 340 (E.D.N.Y. 2016)).  In fact, Suffolk OTB has already served a document request seeking all books and records pursuant to Section 7.05 of the DMS Agreement (notwithstanding that it already has access to this information in the ordinary course).  Consequently, Suffolk OTB has an adequate remedy at law and its equitable claim should be dismissed.  See Evans v. Perl, 862 N.Y.S.2d 814, 2008 N.Y. Misc. LEXIS 2105, at *27  (Sup. Ct. N.Y. Cnty. 2008) (cited in Opp. ¶ 129) ("It is black letter law that in order to prevail on an equitable claim plaintiff must show that he has no adequate remedy at law.").  Suffolk OTB does not respond to this point in its Opposition.

---

[34] Defendants also dispute that Suffolk OTB's allegations that they "unlawfully diverted Suffolk OTB's funds"  and "refused Suffolk OTB access to books and records," Opp. ¶ 128, but these allegations raise issues of fact that cannot be resolved on a motion to dismiss.

[35] The matrimonial cases cited by Suffolk OTB are wholly inapposite; both included well-pled allegations of a fiduciary relationship between husband and wife and, neither involved duplicative claims for breach of contract.  See DiTerlizzi v. DiTerlizzi, 459 N.Y.S.2d 797, 798 (2d Dep't 1983); Darlagiannis v. Darlagiannis, 369 N.Y.S.2d 475, 476 (2d Dep't 1975) (Opp. ¶ 129).

43

Finally, Suffolk OTB argues that, at the pleadings stage, alternative pleadings that include legal and equitable relief withstand dismissal.  See Opp. ¶ 129 (citing Evans, 2008 N.Y. Misc. LEXIS 2105).  In Evans, however, the Court noted that it could not "conclude at the pleadings stage than an adequate legal remedy otherwise exists warranting dismissal…."  Evans, 2008 N.Y. Misc. LEXIS 2105, at *27.  Here, by contrast, Suffolk OTB's allegations make clear that it has an adequate remedy at law.  See Complaint ¶ 93 (alleging that Section 7.05 of the DMS Agreement entitles it to access to the books and records of the VLT Facility).  Suffolk OTB's claim for an accounting should accordingly be dismissed.  See Leveraged Leasing Admin. Corp. ex rel. Dweck v. Pacificorp Cap., 87 F.3d 44, 49 (2d Cir. 1996) ("Because the plaintiffs have sought money damages in … their breach of contract … claim[], and because discovery as to the measure of damages would be available to them if they were to prevail on [such claim]…no useful purpose would be served by treating the plaintiffs' equitable accounting claim as an additional, and duplicative, action at law.").

## CONCLUSION[36]

For all of the foregoing reasons and as set forth in the Opening Brief, Defendants respectfully request that this Court issue an order as follows:

(1)    Dismissing Counts 1, 4, 5, 6, 7, 8, and 9 in their entirety;

---

[36] Suffolk OTB argues that if the Court determines that its claims are inadequately pleaded, it should be granted leave to amend because any pleading shortcomings are "mere technicalities."  Opp. ¶ 132.  Contrary to Suffolk OTB's claim, Defendants have shown that Suffolk OTB's claims are legally infirm for any number of fundamental reasons, such as failing to allege a false "claim" for purposes of its NYFCA claims, asserting various, impermissibly duplicative claims, and attempting to pierce the corporate veil without any colorable allegations of complete domination and injustice.  In situations like this one, where any amendment would be futile, courts routinely reject requests seeking leave to amend. See, e.g., Candelaria v. Spurlock, 2008 U.S. Dist. LEXIS 51595, at *18-19 (E.D.N.Y. July 3, 2008) (denying plaintiff's request for leave to amend as futile where "the law offers no viable theory of recovery under all of the facts giving rise to this case").

AMERICAS 101661622

(2)    Dismissing Count 2 insofar as it alleges (a) breaches of the DMS Agreement by DNC Gaming, (b) breaches of the DMS Agreement by Delaware North Manager concerning overcharging for construction costs for elevator upgrades and valet parking, applying for trademarks or trade names in violation of Section 10.02, and failing to obtain Plaintiff's consent, agreement and input, and (c) a breach of the implied covenant of good faith and fair dealing;

(3)    Dismissing DNC and DNC Gaming as defendants from this proceeding; and

(4)    Granting such further relief as the Court deems just and proper.

Dated: December 30, 2019                      **WHITE & CASE LLP**
        New York, New York                      /s/ David G. Hille

                                               David G. Hille
                                               Joshua D. Weedman
                                               Julia M. Winters
                                               Isaac S. Glassman
                                               1221 Avenue of the Americas
                                               New York, NY 10020-1095
                                               Phone: 212.819.8200

                                               *Attorneys for Defendants*

45